UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | | |
|---|---|---|
| BAYSTATE HEALTH, INC., | ) | Civil Action No. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT AND** |
| | ) | **DEMAND FOR JURY TRIAL** |
| BAY STATE PHYSICAL THERAPY, P.C., | ) | |
| BAY STATE PHYSICAL THERAPY OF | ) | |
| RANDOPLH, INC., & STEVEN WINDWER, | ) | |
| Defendants. | ) | |

## I.    INTRODUCTION

1.    Plaintiff Baystate Health, Inc. seeks relief, including injunctive relief and monetary damages, for the willful infringement of its trademarks by Defendants.  Plaintiff further seeks cancellation of Defendants' U.S. Trademark Registration No. 3,943,252 for "BAY STATE PHYSICAL THERAPY" and Design.

## II.    PARTIES

2.    Plaintiff Baystate Health, Inc. ("Baystate") is a Massachusetts nonprofit corporation with a principal place of business at 759 Chestnut Street, Springfield, Massachusetts.

3.    Defendant Bay State Physical Therapy, P.C.  is a Massachusetts corporation with a principal place of business at 1 Credit Union Way, 3rd Floor, Randolph, Massachusetts.

4.    Defendant Bay State Physical Therapy of Randolph, Inc. is a Massachusetts corporation with a principal place of business at 1 Credit Union Way, 3rd Floor, Randolph, Massachusetts.

5.      On information and belief, Bay State Physical Therapy, P.C. and Bay State Physical Therapy of Randolph, Inc. (together, "BSPT") are each alter egos of the other, responsible for the other's debts.

6.      Defendant Steven Windwer ("Mr. Windwer") is an individual residing at 6 Heather Drive, Milton, Massachusetts.  He is the president, secretary, treasurer, and a director of Bay State Physical Therapy of Randolph, Inc. and the sole officer and director of Bay State Physical Therapy, P.C.  He holds himself out as the founder and CEO of an entity operating under the name "Bay State Physical Therapy."

### III.      JURISDICTION AND VENUE

7.      Jurisdiction over this action is proper in this Court pursuant to 28 U.S.C. § 1331 because this action arises under the federal trademark law of the Lanham Act, including 15 U.S.C. § 1121.

8.      The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Baystate's state law claims, because they arise out of the transactions and occurrences that are the subject matter of Baystate's Lanham Act claims.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2).

### IV.      FACTS

**A.      Baystate Has Established Its Common Law Rights in Western Massachusetts to BAYSTATE As a Specific and Unique Identifier of the Source of Its Health Care Services.**

10.      Baystate is an integrated health system and the largest health care provider in Western Massachusetts.  Baystate operates Baystate Medical Center, Baystate's flagship

teaching hospital, a children's hospital, three community hospitals and a network of more than eighty (80) medical practices.

11.    Health care services have been provided at Baystate's Chestnut Street location in Springfield, Massachusetts, by Baystate itself or through its predecessors, for over 130 years.

12.    Baystate began to use the mark BAYSTATE in association with health care services more than 40 years ago, in 1976, when Medical Center of Western Massachusetts and Wesson Memorial Hospital agreed to merge to form Baystate Medical Center.

13.    Baystate has since continuously used the mark BAYSTATE on or in association with a wide range of health care services.  Such services include the provision of physical therapy and/or rehabilitative services.

14.    Baystate's extensive use and advertising of the BAYSTATE mark since its adoption caused the mark to become an important identifier of the source of Baystate's health-related services and to distinguish the source of those services from the source of services provided by others.

15.    The BAYSTATE trademark has been and continues to be a well-known brand recognized by a majority of consumers as identifying a specific source of quality health care services in the Western Massachusetts region.

16.    Individuals, physicians, physician groups, health care organizations and the like in Massachusetts commonly refer to Baystate Medical Center, a hospital widely recognized as a premier medical facility, as "Baystate."

B.      **Baystate Has Established Statutory Protection of Its Family of BAYSTATE Trademarks.**

17.     Baystate has sought protection of its family of BAYSTATE marks through the registration of such marks with the Commonwealth of Massachusetts and with the United States Patent and Trademark Office ("USPTO").

18.     Currently, Baystate owns eight (8) active state-registered marks and eight (8) active federally registered marks that incorporate or consist of the BAYSTATE mark.

19.     Early steps in seeking federal protection of its BAYSTATE trademark are set forth below:

   a.   On April 4, 1983, Baystate applied to the USPTO for registration of its BAYSTATE MEDICAL CENTER and Design trademark for medical services and related educational services, which mark was registered as of September 4, 1984, as U.S. Trademark Registration No. 1,293,451, with a date of first use in commerce of November 18, 1982;

   b.   On May 25, 1988, Baystate applied to the USPTO for registration of its BAYSTATE HEALTH SYSTEM and Design trademark for health care services, which mark was registered as of January 16, 1990, as U.S. Trademark Registration No. 1,578,251, with a date of first use in commerce of at least as early as March 1988;

   c.   On January 4, 1990, Baystate applied to the USPTO for registration of its BAYSTATE and Design trademark for health care services and related educational services, which mark was registered as of June 18, 1991, as U.S.

Trademark Registration No. 1,648,384, with a date of first use in commerce at least as early as March 1988.

    d.    On October 22, 2001, Baystate applied to the USPTO for registration of its BAYSTATE trademark for health care services, which mark was registered as of October 14, 2003, as U.S. Trademark Registration No. 2,773,059, with a date of first use in commerce at least as early as March 1988.

**C.**    <u>**BSPT Begins Use of the BAY STATE Name.**</u>

20.    On information and belief, Mr. Windwer formed Bay State Physical Therapy of Randolph, P.C. (a predecessor entity to defendant Bay State Physical Therapy of Randolph, Inc.) in March 1995 and provided physical therapy services near Boston through that business.

21.    Defendants claim to have first used the name BAY STATE PHYSICAL THERAPY in commerce in August 1995.

22.    On information and belief, Mr. Windwer, as the Founder and CEO of BSPT, has controlled, at all times relevant to this Complaint, the use of the name BAY STATE PHYSICAL THERAPY in connection with certain BSPT facilities.

23.    On information and belief, BSPT and Mr. Windwer have been and are aware that Baystate offered and extensively markets a wide variety of health care services including physical therapy and/or rehabilitative services under the BAYSTATE mark.

24.    In 2008, after becoming aware of BSPT's commercial use of the mark BAY STATE PHYSICAL THERAPY, and recognizing the potential for consumer confusion that may result, Baystate began discussions with BSPT to eliminate the source of that confusion.

25.     At that time, BSPT operated twenty (20) clinics, all of which, on information and belief, were located in Eastern Massachusetts.

26.     BSPT and Mr. Windwer at the time represented that they were willing to limit their use of the term BAY STATE PHYSICAL THERAPY to physical therapy clinics located east of the western boundary of Worcester County, a representation by which they abided for over ten (10) years until November 1, 2019.

27.     As a result of those discussions and representations and BSPT's course of conduct thereafter, Baystate understood that BSPT would not use or associate the name BAY STATE with any physical therapy clinics or services within Baystate's core market; that is, west of the western boundary of Worcester County.

**D.    BSPT Fraudulently Files for Federal Registration of BAY STATE PHYSICAL THERAPY.**

28.     On April 9, 2010, unbeknownst to Baystate, BSPT filed U.S. Trademark Application No. 85/010,310 ("the '310 Application") for BAY STATE PHYSICAL THERAPY and Design to designate its physical therapy services for "preventing the onset, symptoms and progression of impairments, functional limitations, and disabilities resulting from disease, disorders, conditions, or injuries."

29.     At that time, Mr. Windwer and Paul Cooperstein ("Mr Cooperstein"), BSPT's counsel, understood that Baystate extensively used the BAYSTATE trademark to designate its health care services, including its physical therapy and/or rehabilitative services, and that it had acquired common law and state and federal statutory rights to the BAYSTATE mark in connection with those services.

30.     At least for those reasons, Mr. Windwer and Mr. Cooperstein then knew or should have known that consumer confusion would likely result from BSPT's use of the BAY STATE PHYSICAL THERAPY mark.

31.     As part of BSPT's '310 Application for registration of the BAY STATE PHYSICAL THERAPY mark, Mr. Cooperstein, on behalf of BSPT, signed a declaration that, "no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive."  The declaration signed by Mr. Cooperstein on behalf of BSPT also recited that the signatory was "warned that willful false statements and the like . . .  may jeopardize the validity of the application or any resulting registration."

32.     At the time BSPT filed the '310 Application, less than two (2) years after Baystate notified BSPT of its rights to the BAYSTATE mark in connection with health care services, BSPT and Mr. Windwer knew or should have known that Baystate had the right, both at common law and pursuant to state and federal trademark registrations, to use the mark BAYSTATE in connection with health care services, including physical therapy and/or rehabilitative services. At that time, BSPT and Mr. Windwer also knew or should have known that the similarity between the applied-for mark and Baystate's mark and the similarity between the services offered under each mark created a likelihood of confusion.

33.     On information and belief, BSPT and Mr. Windwer knew that BSPT's declaration in the '310 Application was a false representation of fact and was intended to deceive the USPTO to secure approval of its application.

34.     On information and belief, USPTO relied upon BSPT's false representation in granting registration of the BAY STATE PHYSICAL THERAPY mark pursuant to BSPT's '310 Application.  The mark registered as U.S. Reg. No. 3,942,252 on April 12, 2011.

**E.      BSPT Suddenly Expands into Western Massachusetts Using the BAY STATE Mark and Causing Imminent Risk of Significant Consumer Confusion and Serious and Irreparable Harm to Baystate and Consumers of Health Care Services in Western Massachusetts.**

35.     BSPT had not expanded into Western Massachusetts prior to November 1, 2019.

36.     On information and belief, BSPT "partnered" with Calera Capital, a private equity firm, through a transaction that commenced on or about March 2019.

37.     On information and belief, this transaction was followed by a period of rapid corporate reorganization, including Bay State Physical Therapy of Randolph's conversion from a professional corporation to a domestic profit corporation, the addition of a senior managing director and a managing director of Calera Capital to BSPT's Board, and the formation of Bay State Physical Therapy, P.C.

38.     On information and belief, BSPT and Mr. Windwer, with Calera Capital's assistance, now aim to provide physical therapy services throughout the entire Northeast.

39.     On information and belief, BSPT has acquired and otherwise assumed control of the operations of nine (9) additional facilities between March 2019 and the date of this Complaint.

40.     On information and belief, BSPT opened a facility in Springfield, Massachusetts on November 1, 2019 under the name "Bay State Physical Therapy."  This facility (hereinafter

"BSPT–Springfield") is located at 1739 Allen Street, which is within ten (10) miles of Baystate's flagship hospital.

41.     The following is a true and accurate depiction of a map that Defendants provide on their BSPT website to show the location of BSPT's facilities.



42.     BSPT–Springfield is the only physical therapy clinic or facility west of the western boundary of Worcester County owned and operated by BSPT.

43.     A search for "Baystate Physical Therapy Springfield" on GoogleMaps yields only two facilities: Baystate Rehabilitation Care–Springfield and BSPT–Springfield. The former facility is owned and operated by Baystate in its flagship hospital Baystate Medical Center, that individuals, physicians, physician groups, health care organizations and the like commonly refer to as "Baystate." The latter facility is owned and operated by Defendant BSPT. Consumer reviews currently available on BSPT–Springfield's website show that consumers refer to the facility as "Bay State" or "Baystate."

44.     On December 13, 2019, upon becoming aware that BSPT had expanded its commercial use of the term BAY STATE PHYSICAL THERAPY to Western Massachusetts, and of the inevitability of consumer confusion under such circumstances, Baystate contacted BSPT in an attempt to eliminate that source of confusion.

45.     Notwithstanding numerous subsequent communications between the parties, BSPT and Mr. Windwer have refused to stop using a trademark that includes the term "BAY STATE" to identify its physical therapy clinic located in Springfield, Massachusetts.

46.     BSPT continues to operate BSPT–Springfield under the name BAY STATE PHYSICAL THERAPY.

47.     BSPT's use of the name BAY STATE in connection with physical therapy services offered in Springfield, Massachusetts is virtually certain to have caused, and will continue to cause, substantial confusion among consumers as to the source or origin of those services.

48.     The likely confusion caused by BSPT's use of the BAY STATE PHYSICAL THERAPY mark in Baystate's core market is creating a high risk of substantial, imminent, and irreparable harm to Baystate by causing degradation of its BAYSTATE mark as a valuable identifier of its unique health care services, by causing irreparable damage to Baystate's reputation through the provision of inadequate and unauthorized services by BSPT under and in association with the BAYSTATE brand, and by the intentional misdirection of potential customers seeking Baystate's services to a competitor.

## COUNT I
### Trademark Infringement (Common Law)

49.     Baystate incorporates by reference each and every allegation in the preceding paragraphs of this Complaint as if set forth in this count of the Complaint.

50.     Baystate has used the mark BAYSTATE in commerce since 1976 to identify its health care services.  Soon after its adoption and use, the mark acquired secondary meaning and an immediate association with Baystate's services.

51.     Defendants' use of the mark BAY STATE PHYSICAL THERAPY to identify its physical therapy services is likely to cause confusion or mistake or to deceive.

52.     Defendants' use of the mark BAY STATE PHYSICAL THERAPY is without permission or authority of Baystate.

53.     Defendants' conduct described above has been willful and knowing.

54.     As both a direct and proximate result of Defendants' use of a confusing similar mark, Baystate has suffered and will continue to suffer substantial loss and irreparable injury.

## COUNT II
### Trademark Infringement (M.G.L. c. 110H, § 14)

55.     Baystate incorporates by reference each and every allegation in the preceding paragraphs of this Complaint as if set forth in this count of the Complaint.

56.     Baystate has registered a family of marks under BAYSTATE and used those mark in commerce to identify its health care services.

57.     Defendants' use in commerce of the mark BAY STATE PHYSICAL THERAPY to identify its physical therapy services is likely to cause confusion or mistake or to deceive.

58.     Defendants' use in commerce of the mark BAY STATE PHYSICAL THERAPY is without permission or authority of Baystate.

59.     Defendants' conduct described above has been willful and knowing.

60.     As both a direct and proximate result of Defendants' use of a confusing similar mark, Baystate has suffered and will continue to suffer substantial loss and irreparable injury.

## COUNT III
### Trademark Infringement (15 U.S.C. § 1114)

61.     Baystate incorporates by reference each and every allegation in the preceding paragraphs of this Complaint as if set forth in this count of the Complaint.

62.     Baystate has registered a family of marks under BAYSTATE and used that mark in commerce to designate its health services, which include physical therapy.

63.     Defendants' use in commerce of the mark BAY STATE PHYSICAL THERAPY to identify physical therapy services is likely to continue to cause confusion or mistake or to deceive.

64.     Defendants' use in commerce of the mark BAY STATE PHYSICAL THERAPY is without permission or authority of Baystate.

65.     Defendants' conduct described above has been willful and knowing.

66.     As both a direct and proximate result of Defendants' use of a confusing similar mark, Baystate has suffered and will continue to suffer substantial loss and irreparable injury.

## COUNT IV
### False Designation of Origin (15 U.S.C. § 1125(a))

67.     Baystate incorporates by reference each and every allegation in the preceding paragraphs of this Complaint as if set forth in this count of the Complaint.

68.     Baystate's commercial use of the mark BAYSTATE to identify health care services since 1976, combined with its registration of a family of service marks under the BAYSTATE name, establishes its ownership of the trademark BAYSTATE in that sector under federal, state, and common law.

69.     Defendants' use in commerce of the mark BAY STATE PHYSICAL THERAPY to identify physical therapy services is likely to continue to cause confusion or mistake or to deceive as to the affiliation, connection or association of Defendants with Baystate as to origin, sponsorship, or approval of Defendants' goods or services by Baystate.

70.     The above referenced activities of Defendants have been willful.

71.     As a direct and proximate result of Defendants' use of a confusingly similar mark, Baystate has suffered and will continue to suffer loss and irreparable injury.

## COUNT V
## Violations of M.G.L. c. 93A, § 11

72.     Baystate incorporates by reference each and every allegation in the preceding paragraphs of this Complaint as if set forth in this count of the Complaint.

73.     All parties are engaged in the conduct of trade or commerce as defined in Mass. G.L. ch. 93A, §§ 2 and 11.

74.     Defendants' conduct, as described herein, constitutes unfair and/or deceptive acts or practices that are in violation of Mass. G.L. ch. 93A, §§ 2 and 11.

75.     Defendants' conduct, described above, occurred primarily in Massachusetts.

76.     Defendants' use or employment of the unfair and/or deceptive acts or practices was willful and/or knowing.

77.    As a direct and proximate consequence of Defendants' unfair and/or deceptive acts or practices, Baystate has suffered and will continue to suffer loss and irreparable injury.

## COUNT VI
## Fraud on the USPTO

78.    Baystate incorporates by reference each and every allegation in the preceding paragraphs of this Complaint as if set forth in this count of the Complaint.

79.    U.S. Trademark Registration No. 3,943,252 was obtained by BSPT through false statements to the USPTO.

80.    Specifically, Mr. Cooperstein, as BSPT's agent, declared that "no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive." This representation was material to the USPTO's decision to register the mark, as this declaration, which must be true, is a required element of the application. This representation, however, was knowingly false.

81.    Defendant BSPT's false statements to the USPTO have damaged and injured Baystate.

## V.    PRAYER FOR RELIEF

WHEREFORE, due to the ongoing and irreparable injury to Baystate caused by Defendants' use of the mark BAY STATE PHYSICAL THERAPY in Springfield, Massachusetts, Plaintiff Baystate Health, Inc. respectfully requests that this Honorable Court enter a preliminary injunction enjoining and restraining Defendants from using the mark BAY STATE

or any version thereof to designate their services in Springfield, Massachusetts, or in any location west of the western boundary of Worcester County, Massachusetts, and prays that this court order the following relief:

1. Entry of judgment, on all counts, in favor of Baystate;

2. Cancellation of Defendants' registration for U.S. Reg. No. 3,943,252;

3. That Defendants, their agents, servants, employees, and all persons acting under their permission and authority be enjoined and restrained from further use of BAY STATE in connection with any health care services, including but not limited to physical therapy services, and any other infringement of Baystate's trademarks;

4. An award of monetary damages, including, but not limited to, actual, incidental and consequential damages, treble damages, attorneys' fees, interests, and costs;

5. Such other relief that the Court deems just and proper.


**THE PLAINTIFF DEMANDS A TRIAL BY JURY AS TO ALL ISSUES SO TRIABLE.**


PLAINTIFF,
BAYSTATE HEALTH, INC.
By Its Attorneys,

*/s/ Mary R. Bonzagni*
Mary R. Bonzagni, Esq. (BBO # 553771)
James C. Duda, Esq. (BBO # 551207)
Lauren C. Ostberg, Esq. (BBO # 696883)
Bulkley, Richardson and Gelinas, LLP
1500 Main Street, Suite 2700
Springfield, MA 01115-5507
Tel. (413) 272-6286
Dated: March 9, 2020              mbonzagni@bulkley.com
jduda@bulkley.com
lostberg@bulkley.com

3231002v1