## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BAYSTATE HEALTH, INC.,<br><br>        Plaintiff<br><br>     v.<br><br>BAY STATE PHYSICAL THERAPY, P.C.,<br>BAY STATE PHYSICAL THERAPY<br>OF RANDOLPH, INC., AND STEVEN<br>WINDWER,<br>        Defendants. | Civil Action No. 3:20-cv-30042-MGM |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S
## MOTION FOR PRELIMINARY INJUNCTION
## AND REQUEST FOR ORAL ARGUMENT

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND............................................................................... 2

ARGUMENT ...................................................................................................... 4

I.      Plaintiff Has Delayed for Twelve Years. ............................................... 5

II.     Plaintiff is Unlikely to Succeed on its Claim of Trademark Infringement. ...................... 7

        A.      BSPT's Incontestable Trademark Registration is Conclusive Evidence of Its Exclusive Right to Use BAY STATE PHYSICAL THERAPY...................... 8

        B.      Plaintiff Cannot Prove Valid Trademark Rights Prior to BSPT's First Use.......... 9

        C.      Plaintiff Has Failed to Meet its Burden to Show a Likelihood of Confusion. ............. 11

                i.      Plaintiff's Mark is Weak. ............................................. 12

                ii.     The Parties' Marks are Distinct. ................................... 13

                iii.    The Parties' Trade Channels are Distinct. .................... 14

                iv.     Plaintiff's Evidence of Actual Confusion Is Unpersuasive. ................... 15

                v.      The Parties' Respective Consumers are Sophisticated. ........................... 16

        D.      BSPT is Likely to Succeed on a Defense of Laches. ......................................... 166

III.    Plaintiff Has Not Suffered Irreparable Injury. ..................................... 17

IV.     Plaintiff Does Not Allege Any Injury Which Outweighs the Harm BSPT Would Suffer if a Preliminary Injunction Were Granted. .......................... 18

V.      A Preliminary Injunction Would Harm the Public Interest. ................. 19

CONCLUSION.................................................................................................. 20

REQUEST FOR ORAL ARGUMENT ............................................................. 20

Certificate of Service ........................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advance Stores Co. v. Refinishing Specialties, Inc.*,
  948 F. Supp. 643 (W.D. Ky. 1996), *aff'd sub nom. Advance Stores Co. Inc. v.*
  *Refinishing Specialties, Inc.*, 188 F.3d 408 (6th Cir. 1999)........................................................9

*Art Ask Agency v. The Individuals, et al.*,
  No. 20-cv-1666, 2020 U.S. Dist. LEXIS 49954 (N.D. Ill. March 18, 2020)..........................19

*Art Attacks Ink, LLC v. MGA Enter. Inc.*,
  581 F.3d 1138 (9th Cir. 2009) .................................................................................................15

*Bassett v. Jensen*,
  No. 18-10576-PBS, 2019 WL 5457771 (D. Mass. Oct. 24, 2019)....................................5, 18

*Bay State Sav. Bank v. Baystate Fin. Servs., L.L.C.*,
  484 F. Supp. 2d 205 (D. Mass. 2007) ...................................................................1, 9, 10, 12

*Borinquen Biscuit Corp. v. M.V. Trading Corp.*,
  443 F.3d 112 (1st Cir. 2006) .....................................................................................................7

*Bos. Beer Co. v. Slesar Bros. Brewing Co.*,
  9 F.3d 175 (1st Cir. 1993).........................................................................................................9

*Bos. Duck Tours, LP v. Super Duck Tours, LLC*,
  531 F.3d 1 (1st Cir. 2008).........................................................................................................7

*Bourne Co. v. Tower Records, Inc.*,
  976 F.2d 99 (2d Cir. 1992).......................................................................................................6

*Carefirst of Md., Inc. v. FirstHealth of the Carolinas Inc.*,
  77 U.S.P.Q.2d 1492, 2005 WL 2451671 (T.T.A.B. 2005)....................................................16

*Charlesbank Equity Fund II v. Blinds to Go, Inc.*,
  370 F.3d 151 (1st Cir. 2004)...........................................................................................4, 5, 18

*CMM Cable Rep., Inc. v. Ocean Coast Props., Inc.*,
  48 F.3d 618 (1st Cir. 1995).....................................................................................................19

*Commerce Bank & Tr. Co. v. TD Banknorth, Inc.*,
  554 F. Supp. 2d 77 (D. Mass. 2008) ........................................................................................9

*Commerce Nat'l Ins. Servs. v. Commerce Ins. Agency, Inc.*,
  214 F.3d 432 (3rd Cir. 2000) ..................................................................................................10

# TABLE OF CONTENTS
(continued)

Page

*Dena Corp. v. Belvedere Intern., Inc.*,
  950 F.2d 1555 (Fed. Cir. 1991) ................................................................................ 10

*Fritz v. Arthur D. Little, Inc.*,
  944 F. Supp. 95 (D. Mass. 1996) ............................................................................... 5

*Gear, Inc. v. L.A. Gear Cal., Inc.*,
  637 F. Supp. 1323 (S.D.N.Y. 1986) ........................................................................... 6

*Helena Rubinstein, Inc. v. Frances Denney, Inc.*,
  286 F. Supp. 132 (S.D.N.Y. 1968) ............................................................................ 5

*Jagex Ltd. v. Impulse Software*,
  750 F. Supp. 2d 228 (D. Mass. 2010) ...................................................................... 18

*Lotus Dev. Corp. v. Paperback Software Int'l*,
  740 F. Supp. 37 (D. Mass. 1990) ............................................................................. 17

*Mass. Coalition of Citizens with Disabilities v. Civil Def. Agency & Office of
  Emergency Preparedness*,
  649 F.2d 71 (1st Cir. 1981) ....................................................................................... 4

*Mazurek v. Armstrong*,
  520 U.S. 968 (1997) .................................................................................................. 4

*N. Trust Corp. v. N. Bank & Trust Co.*,
  1991 WL 346397 (D. Mass. Nov. 26, 1991) ........................................................... 12

*Packman v. Chi. Tribune Co.*,
  267 F.3d 628 (7th Cir. 2001) ................................................................................... 16

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*,
  469 U.S. 189 (1985) .................................................................................................. 8

*Peoples Fed. Sav. Bank. v. People's United Bank*,
  No. 10-11002-NMG, 2010 WL 3167579 (D. Mass. Aug. 9, 2010) ......................... 13

*Perini Corp. v. Perini Const., Inc.*,
  915 F.2d 121 (4th Cir. 1990) ................................................................................... 10

*Philip Morris, Inc. v. Harshbarger*,
  159 F.3d 670 (1st Cir.1998) ...................................................................................... 7

*Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*,
  657 F.2d 482 (1st Cir.1981) .......................................................................... 11, 12, 13

# TABLE OF CONTENTS
(continued)

Page

*Pilot Corp. of Am. v. Fisher-Price, Inc.*,
  501 F. Supp. 2d 292 (D. Conn. 2007)......................................................................14

*Saratoga Vichy Spring Co. v. Lehman*,
  625 F.2d 1037 (2d Cir. 1980)................................................................................10

*Scooter Store, Inc. v. SpinLife.com, LLC*,
  777 F. Supp. 2d 1102 (S.D. Ohio 2011) ................................................................14

*Sun Banks of Fla., Inc. v. Sun. Fed. Sav. & Loan*,
  651 F.2d 311 (5th Cir. 1981) ................................................................................12

*Syntex Labs., Inc. v. Norwich Pharm. Co.*,
  437 F.2d 566 (2d Cir. 1971)..................................................................................14

*Tough Traveler, Ltd. v. Outbound Prods.*,
  60 F.3d 964 (2d Cir. 1995)....................................................................................18

*UHS of Del., Inc. v. United Health Servs.*,
  227 F. Supp. 3d 381 (M.D. Pa. 2016) ..................................................................16

*Unleashed Doggie Day Care, LLC v. PetCo Animal Supplies Stores, Inc.*,
  828 F. Supp. 2d 384 (D. Mass. 2010) ..................................................................14

*Valador, Inc. v. HTC Corp.*,
  241 F. Supp. 3d 650 (E.D. Va. 2017) ..................................................................15

*Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*,
  645 F.3d 26 (1st Cir. 2011).............................................................................6, 18

*Wallace Int'l Silversmiths, Inc. v. Wallace Cos.*,
  No. CV88-PT-0021-S, 1988 WL 268169, 7 U.S.P.Q. 2d 1723 (N.D. Ala. Apr.
  26, 1988) ..............................................................................................................8

*Weinberger v. Romero-Barcelo*,
  456 U.S. 305 (1982)..............................................................................................19

*Winter v. Natural Res. Def. Council, Inc.*,
  129 S.Ct. 365 (2008)..............................................................................................4

**Statutes**

Lanham Act, 15 U.S.C. § 1115................................................................................8

Lanham Act, 15 U.S.C. § 1117(a) ......................................................................2, 20

## TABLE OF CONTENTS
(continued)

**Page**

Lanham Act § 15, 15 U.S.C. § 1065 ................................................................9

**Other Authorities**

11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948 (2d ed. 1995) ....................................................................................................4

11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948.1 (Aug. 2019) ....................................................................................................17

Fed. R. of Evid. 408 ..........................................................................................1

5 J. Thomas McCarthy, *McCarthy on Trademarks* § 30:52 (5th ed. March 2020) ......................12

## **INTRODUCTION**

In the midst of a global pandemic, Plaintiff has chosen to file a frivolous motion for a preliminary injunction against Bay State Physical Therapy ("BSPT"). The alleged "emergency" is BSPT's use of its own federally registered, twenty-five year old trademark BAY STATE PHYSICAL THERAPY ("BSPT Mark"). Underscoring that there is no basis for urgent relief, Plaintiff first claimed BSPT was infringing in 2008, and thus has been fully aware of BSPT's use of BAY STATE **for over twelve years**. Furthermore, BSPT's federal trademark registration for the BSPT Mark (Reg. No. 3,943,252) dates back to 2011, is incontestable, and thus serves as conclusive evidence of BSPT's right to use BAY STATE PHYSICAL THERAPY nationwide.

Adding insult to injury, the Plaintiff has misrepresented central facts, concealed key authority from this Court, and failed to confer prior to filing.[1] First, in a blatant violation of Federal Rule of Evidence 408, Plaintiff attaches a 2008 settlement email from BSPT's counsel, and claims that it evidences an "agreement" by BSPT to restrict its use of BAY STATE PHYSICAL THERAPY geographically. Plaintiff relies on this alleged "agreement" to justify its twelve year delay in filing suit. However, there was no agreement—the full set of 2008 and 2009 correspondence clearly demonstrates that BSPT[2] never agreed to limit its use of its mark.

Equally egregious, Plaintiff fails to advise the Court of the decision in *Bay State Sav. Bank v. Baystate Fin. Servs., L.L.C.*, 484 F. Supp. 2d 205, 214 (D. Mass. 2007), which is on all fours with the present dispute. In the prior *Bay State* case, this District found that the geographically descriptive trademark BAY STATE (despite an incontestable federal registration) was not

---

[1] Contrary to its certification, Plaintiff's counsel did not confer with BSPT's counsel prior to filing its Motion. Instead Plaintiff's counsel suddenly insisted (without explanation) that BSPT agree to its settlement demand in the next five hours. When BSPT did not immediately capitulate, Plaintiff filed the Motion. *See* Affidavit of Stephanie Martinez ("Martinez Aff."), at Ex. 9.

[2] Plaintiff was aware of these communications, as Plaintiff's current counsel drafted them.

protectable without proof of secondary meaning prior to any use of the mark by the alleged infringer.  Accordingly, in order to show a likelihood of success on the merits, Plaintiff has to demonstrate that its mark achieved secondary meaning **prior to BSPT's first use of the BSPT Mark in 1995**, which Plaintiff has utterly failed to do.

Given the fatal weaknesses in Plaintiff's case, and the twelve year delay, Plaintiff is not entitled to a preliminary injunction.  Furthermore, Plaintiff's bad faith in filing a meritless motion against a healthcare provider during a global pandemic, and misrepresenting both the facts and the law, entitles BSPT to an award of attorneys' fees under the Lanham Act, 15 U.S.C. § 1117(a).

**FACTUAL BACKGROUND**

Since 1995, BSPT has offered physical therapy in Massachusetts under the BSPT Mark, pictured below:



Affidavit of Steven Windwer ("Windwer Aff."), at ¶ 6.  Over the past twenty-five years BSPT has enjoyed significant growth and now operates sixty physical therapy offices and thirteen chiropractic offices. *Id*. ¶ 4.  BSPT has locations in Massachusetts, Rhode Island, and New Hampshire.  *Id*.  All of BSPT's physical therapy locations operate under the BSPT Mark.  *Id* ¶ 5.

Plaintiff first contacted BSPT on February 11, 2008.  *Id*. ¶ 7.  In its initial correspondence, Plaintiff alleged that BSPT's use of the BSPT Mark infringed Plaintiff's trademark rights.  *Id*. at Ex. 2.  Plaintiff demanded that BSPT cease all use of its mark.  *See id*.  BSPT responded, denying Plaintiff's allegations of infringement and pointing out the weakness of the term "BAY STATE" as well as the crowded field of "BAY STATE" marks.  *See id*. at Ex. 3.  Plaintiff responded, again

claiming that BSPT's use of the BSPT Mark in 2008 infringed Plaintiff's rights and again demanding that BSPT cease use of the BSPT Mark. *See id*. at Ex. 4.

After this second demand, BSPT, solely in an effort to avoid litigation, proposed entering into a license arrangement with Plaintiff. *See id.* at Ex. 5. Plaintiff repeatedly rejected BSPT's licensing offer over the course of several months. *See id.* at Ex. 6-7. In November 2008, BSPT once more advised Plaintiff that it did not believe Plaintiff had a valid claim of infringement. *Id*. at Ex. 8. Nevertheless, BSPT advised Plaintiff that it was still willing to enter into a license agreement (which remained to be drafted) in exchange for a settlement and release. *See id.* at Ex. 8. BSPT further stated that if Plaintiff did not accept the proposal, BSPT would not make any other proposals and was prepared to defend its rights if Plaintiff filed suit. *Id*.

For the next six months, BSPT did not receive a response from Plaintiff. *Id.* ¶ 11. As a result, BSPT considered the matter closed and continued to use the BSPT Mark and invest in the expansion of the BSPT brand. *Id*. However, in May 2009, Plaintiff wrote to BSPT and advised it that Plaintiff would be willing to enter into a license. *Id*. ¶ 12. Plaintiff further stated that "[i]f [BSPT] continues to be willing to resolve this matter as set forth above, we will forward a draft release and license agreement to you for your review and comment." *Id*. at Ex. 9. By this time, after more than a year had passed since Plaintiff's initial letter, BSPT had determined that it was no longer interested in accepting any restrictions on its right to continue to freely use and expand under the BSPT Mark, as it had done for the previous fourteen years. *Id*. ¶ 13. As it was no longer interested in entering into an agreement, BSPT did not respond to Plaintiff's offer. *Id*. Plaintiff's counsel Mary Bonzagni (Plaintiff's current counsel) recognized this plain rejection of the offer by BSPT, writing in June 2009: "[w]here we have not received a response to our letter… we assume that [BSPT] is no longer willing to resolve the above-referenced matter by entering into a license

3

agreement with [Plaintiff]." *Id*. at Ex. 10.  The June 2009 letter was the last correspondence from Plaintiff until December 2019.  *Id*. ¶ 16.

In reliance on Plaintiff's apparent acquiescence, BSPT continued to invest in and expand its use of the BSPT Mark over the next decade.  *Id*. ¶ 17.  During this time, BSPT opened forty new locations outside of the greater Boston area, including a location in Westborough, Massachusetts in 2018.  *Id*.  Springfield was a logical next step for BSPT's continued expansion and BSPT's Springfield location opened in September 2019.  *Id*. ¶ 22.  To protect its growing brand, BSPT also sought to register the BSPT Mark with the United States Patent and Trademark Office ("USPTO") in connection with physical therapy services.  *Id*. ¶ 19.  In examining the application, the USPTO found no conflicting marks, despite Plaintiff's registrations.  *See* Martinez Aff., ¶ 2.  The USPTO registered the BSPT Mark on April 12, 2011.  Windwer Aff., Ex. 12.  The BSPT Mark later became incontestable.  *Id*. at Ex. 13.

## **ARGUMENT**

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.,* 129 S.Ct. 365, 366 (2008).  As a "potent weapon," it should be used "only when necessary to safeguard a litigant's legitimate interests."  *Charlesbank Equity Fund II v. Blinds to Go, Inc.*, 370 F.3d 151, 163 (1st Cir. 2004).  A preliminary injunction should not be granted unless "the movant, **by a clear showing**, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis added).  A judge should grant such injunctive relief "sparingly".  *Mass. Coalition of Citizens with Disabilities v. Civil Def. Agency & Office of Emergency Preparedness,* 649 F.2d 71, 76 n. 7 (1st Cir. 1981).

To obtain a preliminary injunction, the movant must show that: "1) [it] is likely to succeed on the merits of [its] claims; 2) [it] will suffer irreparable injury in the absence of a preliminary injunction; 3) such injury outweighs any harm to the defendant; and 4) the injunction will not harm

public interest." *Charlesbank*, 370 F.3d at 162.  Plaintiff's long delay forecloses preliminary injunctive relief, and Plaintiff cannot meets it heavy burden on the four factors.

I.    **Plaintiff Has Delayed for Twelve Years.**

As Plaintiff's own actions demonstrate, the case before this Court is not urgent.  "A preliminary injunction is sought upon the theory that there is an urgent need for speedy action to protect the plaintiff's rights." *Helena Rubinstein, Inc. v. Frances Denney, Inc.*, 286 F. Supp. 132 (S.D.N.Y. 1968).  However, "[b]y sleeping on its rights a plaintiff demonstrates the lack of need for speedy relief…" *Id*.  "Traditionally, plaintiffs' delay in filing suit… mak[es] preliminary injunctive relief inappropriate." *Fritz v. Arthur D. Little, Inc.*, 944 F. Supp. 95, 98 (D. Mass. 1996).

Even much shorter delays warrant denial of a motion for a preliminary injunction.  For example, the court in *Fritz* found that a movant's "unexplained delay" of two years in commencing the action weighed against a preliminary injunction.  944 F. Supp. at 99; *see also Bassett v. Jensen*, No. 18-10576-PBS, 2019 WL 5457771, at *2 (D. Mass. Oct. 24, 2019) (denying preliminary injunction motion after delay of four and a half years).  Here Plaintiff waited more than **twelve years** from the time it first alleged that BSPT's use of the BSPT Mark infringed Plaintiff's trademark rights to bring this lawsuit and file its Motion.  *See* Windwer Aff., ¶ 7; Dkt. Nos. 1, 10.

Furthermore, Plaintiff cannot excuse its delay by claiming that BSPT's location in Springfield is more harmful than the previous 60 locations.  First, despite eight months of coexistence in Springfield, Plaintiff utterly failed to allege actual harm from BSPT's use of the BSPT Mark.  Second, Plaintiff's vague concerns about potential confusion or damage to its reputation is the same theoretical harm that Plaintiff already claimed in 2008 and then allowed for more than twelve years.  "More harm is not necessarily any more irreparable, so long as it is not qualitatively different." *Fritz*, 944 F. Supp. at 98 (denying motion for preliminary injunction). Harm is only qualitatively different "when the injured party could not reasonably foresee the new

harm." *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 36 (1st Cir. 2011) (quoting *Bourne Co. v. Tower Records, Inc.*, 976 F.2d 99, 102 (2d Cir. 1992)); *see also Gear, Inc. v. L.A. Gear Cal., Inc.*, 637 F. Supp. 1323 (S.D.N.Y. 1986) (denying preliminary injunction where plaintiff did not seek relief until defendant began a new infringing use, because defendant's "continued expansion into new activities cannot be considered a qualitative change.").

Moreover, the lack of any new, qualitatively different harm is further borne out by a closer review of the parties' respective locations.  In arguing that BSPT's Springfield location is now causing Plaintiff new harm, Plaintiff claims that it believed BSPT was, prior to opening its Springfield location, "confin[ing] themselves to the Greater Boston area." *See* Dkt. 11 at 2.  This, however, is not the case.  Instead, since 2009 BSPT has continued to expand north, south and west from the Boston area as it has opened new locations, including opening a physical therapy location in Westborough, Massachusetts in 2018.  *See* Windwer Aff., ¶ 17.  The Springfield location was a natural expansion from BSPT's Westborough location.  *Id*.

Even more importantly, **Plaintiff** has not abided by its claimed geographic divide of Massachusetts and restricted itself to areas west of Worcester County.  Instead, Plaintiff has multiple consumer-facing laboratories in the Boston area, as evidenced by this map showing Plaintiff's "Baystate" branded locations:



*See* Martinez Aff., Ex. 1.  The purple place markers on the map indicate Plaintiff's patient service center laboratory locations.  *Id*. at ¶ 4.  Indeed, when compared to the map of BSPT's locations, it is evident that there has long existed significant overlap in the geographic use of Plaintiff's marks and the BSPT Mark.  *See* Dkt. 11 at 6.  Given this geographic overlap, BSPT operating west of Worcester County is merely an extension of the status quo.  Thus, as a result of the parties' longstanding coexistence, and Plaintiff's inaction for twelve years, an injunction is inappropriate.

## II.     **Plaintiff is Unlikely to Succeed on its Claim of Trademark Infringement.**

"The moving party's likelihood of success is the "touchstone of the preliminary injunction inquiry."  *Id*. at 11 (citing *Philip Morris, Inc. v. Harshbarger*, 159 F.3d 670, 674 (1st Cir.1998)).  Plaintiff cannot demonstrate a likelihood of success on the merits for multiple reasons.

*First*, BSPT owns an incontestable federal trademark registration for BAY STATE PHYSICAL THERAPY in connection with physical therapy services.  An incontestable trademark registration is conclusive evidence of the holder's exclusive right to use that mark in commerce with the registered goods and services.  Plaintiff does not own an incontestable registration to use BAYSTATE in connection with physical therapy services, and does not cite any authority that this Court can ignore BSPT's own federally registered trademark.

*Second*, even if this Court were to allow Plaintiff's claim to proceed based on Plaintiff's claimed prior common law rights in a limited geographic area, Plaintiff still would have to prove that "(1) that its mark[s] [are] entitled to trademark protection, and (2) that the allegedly infringing use is likely to cause consumer confusion." *Bos. Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 12 (1st Cir. 2008) (citing *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 116 (1st Cir. 2006)).  Plaintiff cannot meet either element of this test, because Plaintiff has not shown that BAYSTATE had secondary meaning prior to BSPT's first use, that Plaintiff has prior state law rights throughout western Massachusetts, or that consumer confusion is likely.

***Third***, Plaintiff delayed filing suit for twelve years, during which time Plaintiff secured an incontestable federal registration and opened forty new locations.  Given Plaintiff's undisputed knowledge of BSPT's use of the BSPT Mark, and the serious prejudice to BSPT caused by the delay, Plaintiff's claims are barred by laches.

For any of these reasons, Plaintiff cannot demonstrate a likelihood of success on the merits.

### A.   BSPT's Incontestable Trademark Registration is Conclusive Evidence of Its Exclusive Right to Use BAY STATE PHYSICAL THERAPY

BSPT owns incontestable federal trademark Registration No. 3,943,252 for BAY STATE PHYSICAL THERAPY in connection with physical therapy.  Pursuant to the Lanham Act, 15 U.S.C. § 1115, this registration is "conclusive" evidence of BSPT's right to exclusive use of the BSPT Mark nationwide.  *See also Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 198 (1985) ("The incontestability provisions, as the proponents of the Lanham Act emphasized, provide a means for the registrant to quiet title in the ownership of his mark."); *Wallace Int'l Silversmiths, Inc. v. Wallace Cos.*, No. CV88-PT-0021-S, 1988 WL 268169, 7 U.S.P.Q. 2d 1723, at *2 (N.D. Ala. Apr. 26, 1988) (dismissing counterclaim that party's use of its incontestable trademark infringed other party's trademark rights on the basis that an incontestable mark "may not be challenged on the grounds of . . . prior use.").  In contrast, Plaintiff does not own an incontestable registration for BAYSTATE in connection with physical therapy, and thus enjoys no presumption of priority over BSPT with respect to these services.  Plaintiff therefore fails to offer any basis for this Court to divest BSPT of its exclusive rights to use its incontestable federal trademark.

Plaintiff also claims to own common law rights in BAYSTATE.  While there is little authority on point, some courts have held that a common law senior user can still bring an infringement action against the holder of an incontestable registered trademark pursuant to Section

15 of the Lanham Act, 15 U.S.C. § 1065. Under this "limited geographic area exception" a common law rights holder may be able to claim exclusivity in a particular area, if it proves common law rights that predate the other party's federal registration. *See, e.g.*, *Advance Stores Co. v. Refinishing Specialties, Inc.*, 948 F. Supp. 643, 651 (W.D. Ky. 1996), *aff'd sub nom. Advance Stores Co. Inc. v. Refinishing Specialties, Inc.*, 188 F.3d 408 (6th Cir. 1999). As Plaintiff did not make this argument in its opening brief, it should not be allowed to amend its motion or make this argument on reply. However, to the extent Plaintiff attempts to rely on prior common law rights, Plaintiff has entirely failed to prove prior common law trademark rights under Massachusetts law.

### B.  Plaintiff Cannot Prove Valid Trademark Rights Prior to BSPT's First Use

To prove infringement of its Massachusetts common law trademark rights, Plaintiff has to prove ownership of a valid common law trademark in BAYSTATE in connection with physical therapy throughout its claimed trade area (described as all of Massachusetts west of Worcester County), prior to BSPT's registration of BAY STATE PHYSICAL THERAPY. *See* 15 U.S.C. § 1065; *see also Commerce Bank & Tr. Co. v. TD Banknorth, Inc.*, 554 F. Supp. 2d 77, 88 (D. Mass. 2008) (defining a party's protectable trade area under common law). To prove that its BAYSTATE trademark is valid, Plaintiff must demonstrate that BAYSTATE is either inherently distinctive or is descriptive but achieved secondary meaning prior to BSPT's first use 1995. *Bos. Beer Co. v. Slesar Bros. Brewing Co.,* 9 F.3d 175, 181 (1st Cir. 1993).

This District has already determined that the term BAY STATE is geographically descriptive. *Bay State Sav. Bank v. Baystate Fin. Servs., L.L.C.*, 484 F. Supp. 2d 205, 213 (D. Mass. 2007) ("'Bay State'—the nickname for Massachusetts—is a geographically descriptive mark."). To establish rights in a geographically descriptive mark, the "[p]laintiff is required to show that its marks had acquired secondary meaning **before defendant began using the same or**

**similar mark**…" *Bay State*, 484 F. Supp. at 214 (emphasis added) (citing *Commerce Nat'l Ins. Servs. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 439 (3rd Cir. 2000).

Plaintiff's own trademark filings demonstrate that it cannot prove secondary meaning in BAYSTATE prior to BSPT's first use of BAY STATE in 1995.  In fact, as recently as 2001, Plaintiff disclaimed exclusive rights to the term BAYSTATE. *See* Martinez Aff., Ex. 3, 4; *Dena Corp. v. Belvedere Intern., Inc.*, 950 F.2d 1555, 1560 (Fed. Cir. 1991) ("A disclaimer shows that the applicant enjoys no exclusive rights to the disclaimed symbols apart from the composite mark.").  It was not until Plaintiff's October 14, 2003 trademark registration for BAYSTATE that Plaintiff claimed secondary meaning.  *See* Martinez Aff., Ex. 4.  Plaintiff's first claim of secondary meaning thus occurred more than eight years after BSPT first began use of the BSPT Mark.  *See* Windwer Aff., ¶ 6; *Bay State*, 484 F. Supp. 2d at 214 (holding that plaintiff had failed to prove secondary meaning in "Bay State" prior to defendant's first use of "Bay State"); *see also Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1043 (2d Cir. 1980) (A party whose designation has achieved a secondary meaning "could not prevent the use of that term by one whose use had begun before the secondary meaning was acquired."); *Perini Corp. v. Perini Const., Inc.*, 915 F.2d 121, 125–126 (4th Cir. 1990).  Plaintiff has offered no evidence on how the public perceived its mark prior to 1995 with respect to its core hospital services, much less outpatient physical therapy services, and has therefore utterly failed to meet its burden to prove secondary meaning.  For this reason alone, Plaintiff is unlikely to succeed in its claim for trademark infringement.

In addition to failing to prove secondary meaning prior to 1995, Plaintiff also fails to establish its dates of first use or trade area, and thus does not prove prior common law rights.  As discussed above, since BSPT has an incontestable federal registration, Plaintiff is required to prove its claimed prior rights under Massachusetts common law.  However, Plaintiff's vague and

conclusory affidavits do not even come close to meeting this burden.  Plaintiff does not attest to its claimed date of first use (generally, or in connection with physical therapy), it does not attest to continuous use, it does not identify its trade area beyond claiming that its patients come from "western Massachusetts," and it does not identify where it advertises (or even attach a single example of  advertising related to physical therapy).  *See* Dkts. 13-15.  Plaintiff claims vaguely that it has offered physical therapy services for "decades", which is woefully insufficient to meet its burden of proving priority over BSPT, which has used its BAY STATE mark in connection with physical therapy since 1995.[3]  Nor does Plaintiff offer any evidence that its trade area encompasses all of western Massachusetts, the scope of its requested injunction.

Plaintiff has not made a "clear showing" of valid common law rights in BAYSTATE in western Massachusetts prior to BSPT's first use.  Accordingly, Plaintiff's motion should be denied.

### C.      Plaintiff Has Failed to Meet its Burden to Show a Likelihood of Confusion

In considering whether there is a likelihood of confusion, courts in the First Circuit examine the *Pignons* factors, which are: the similarity of the marks; the similarity of the goods; the relationship between the parties' channels of trade; the relationship between the parties' advertising; the classes of prospective purchasers; evidence of actual confusion; the defendant's intent in adopting its mark; and the strength of the plaintiff's mark.  *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 487 (1st Cir.1981).  No one factor controls the analysis.  In considering the factors most relevant here, it is clear that confusion between Plaintiff's mark and the BSPT Mark is unlikely.

---

[3] Until 2019, none of Plaintiff's trademark filings identified physical therapy services, casting doubt on Plaintiff's claim of longstanding rights.  *See* Martinez Aff., Ex. 5.

###### i.        Plaintiff's Mark is Weak

Plaintiff's BAYSTATE mark is commercially weak and entitled to only a very narrow scope of protection.   As Plaintiff has recognized, "BAY STATE" is a nickname for the Massachusetts, and is thus geographically descriptive.  *See* Martinez Aff., Ex. 2; *see also Bay State*, 484 F. Supp. 2d at 214.   "Ordinarily, geographically suggestive or descriptive terms are considered 'weak' marks…"  *See Pignons*, 675 F.2d at 815.   "Because plaintiff is 'attempting to establish rights to a commonplace, descriptive term used by a variety of businesses in a variety of contexts[,] … the evidentiary bar [is] placed somewhat higher." *Bay State*, 484 F. Supp. 2d at 214.

Furthermore, Plaintiff's mark exists in a heavily crowded field of marks that all use the term "BAY STATE."  "A mark that is hemmed in on all sides by similar marks on similar goods cannot be very 'distinctive.'  It is merely one of a crowd of marks."  5 J. Thomas McCarthy, *McCarthy on Trademarks* § 30:52 (5th ed. March 2020); *see also N. Trust Corp. v. N. Bank & Trust Co.*, 1991 WL 346397 (D. Mass. Nov. 26, 1991) (denying preliminary injunction because the plaintiff's mark existed in a crowded field of marks).  In such a crowd of marks, customers are unlikely to be confused and will have learned to carefully distinguish between similar marks. *Id*. at § 11:85; *see also Sun Banks of Fla., Inc. v. Sun. Fed. Sav. & Loan*, 651 F.2d 311, 316 (5th Cir. 1981) ("[W]e find the extensive third-party use of the word 'Sun' impressive evidence that there would be *no* likelihood of confusion.") (emphasis added).

Here, "BAY STATE" is widely used by a variety of businesses that provide goods and services in Massachusetts.  A search of business records filed with the Secretary of the Commonwealth of Massachusetts for the term "BAY STATE" revealed more than 1,800 businesses that have registered corporate names that include the term.  *See* Martinez Aff., Ex. 6. Moreover, many of these businesses offer healthcare services, including, for example, BAYSTATE OB/GYN GROUP INC., BAY STATE EYE CARE OPTICAL SHOPPE,

BAYSTATE EYE CARE,  BAY STATE ANESTHESIA, BAYSTATE NEUROPSYCHOLOGY & CONCUSSION MANAGEMENT, LLC, BAY STATE CENTRE FAMILY CHIROPRACTIC, BAY STATE FOOT & ANKLE SPECIALISTS, LLC, BAY STATE MEDICAL ASSOCIATES, BAY STATE DENTAL SPECIALISTS, PC, BAY STATE ENDODONTICS, BAY STATE ORAL SURGERY ASSOCIATES, INC., BAY STATE ORTHODONTICS, BAYSTATE DENTAL PC, BAYSTATE EYE CENTER, and BAYSTATE AUDIOLOGY. *See* Martinez Aff., Ex. 7.  Each of these healthcare providers are currently using and promoting their respective "Bay State" trademarks and the first three healthcare providers listed are located in Springfield, Massachusetts. *Id*.  As a result of these numerous uses of BAY STATE in connection with medical services, and given that it is the nickname of Massachusetts, consumers have become conditioned to distinguishing between such marks.  BSPT's use of the BSPT Mark, which includes a unique design and the term "PHYSICAL THERAPY," is not likely to cause confusion.

### ii.    The Parties' Marks are Distinct

When considered as it is used in commerce and in light of the crowded field, the BSPT Mark is distinct from Plaintiff's mark.  Similarity between two marks "is determined on the basis of the total effect of the designation, rather than a comparison of the individual features." *Pignons*, 657 F.2d at 487; *see also Peoples Fed. Sav. Bank. v. People's United Bank*, No. 10-11002-NMG, 2010 WL 3167579, at *6 (D. Mass. Aug. 9, 2010) (denying preliminary injunction in part because "although the banks' marks contain the same dominant word, the visual differences in their logos neutralize this factor).  Plaintiff's logo treatment consists of the design of a cross, which contains a family of four, and the words BAYSTATE HEALTH.  As is made clear from Plaintiff's Brand Standards Style Guide, except when its mark appears in the middle of text, Plaintiff uses its cross design logo treatment to identify its services.  *See* Dkt. 11, Ex. 14.  The BSPT Mark, on the other hand, includes a graphic consisting of four images, one of a person biking, one running, one

swimming, and one playing basketball.  These distinctions, when paired with the weakness of the term BAY STATE, mean that consumers are unlikely to be confused.

Moreover, the USPTO agrees that confusion between Plaintiff's mark and the BSPT Mark is unlikely.  When BSPT applied for the BSPT Mark, the USPTO did not object on the basis of likelihood of confusion with Plaintiff's registrations.  *See* Martinez Aff., ¶ 2.  The USPTO's determination that no conflict exists is "entitled to great weight."  *See Syntex Labs., Inc. v. Norwich Pharm. Co.*, 437 F.2d 566, 569 (2d Cir. 1971); *see also Pilot Corp. of Am. v. Fisher-Price, Inc.*, 501 F. Supp. 2d 292, 302-03 (D. Conn. 2007) (affording "great weight" to USPTO's registration of accused mark as evidence of lack of likelihood of confusion).[4]

### iii.    The Parties' Trade Channels are Distinct

Because Plaintiff and BSPT offer their services in distinct trade channels, consumers will not encounter the parties' respective services simultaneously, lessening any likelihood of confusion.  This District has found that "operating in different channels of trade" can "minimize the likelihood of confusion."  *Unleashed Doggie Day Care, LLC v. PetCo Animal Supplies Stores, Inc.*, 828 F. Supp. 2d 384, 394 (D. Mass. 2010).  A majority of BSPT's physical therapy locations are either freestanding retail locations or are located in office complexes, where BSPT enjoys its own office.  Windwer Aff., ¶ 18.  BSPT's remaining physical therapy locations are located inside YMCA gym facilities.  *Id*.  Plaintiff, on the other hand, operates its own facilities, a majority of which are located in or next to Plaintiff's hospital centers.  *See* Martinez Aff., Ex. 8.  The parties' distinct trade channels further evidence that there is no likelihood of confusion.

---

[4] Plaintiff's claim of fraud on the USPTO is without merit.  To establish fraud, Plaintiff would need to show, by clear and convincing evidence, that BSPT did not have an "honest, good faith belief" that it was entitled to registration, and that it intended to deceive the USPTO.  *Scooter Store, Inc. v. SpinLife.com, LLC*, 777 F. Supp. 2d 1102, 1111-1112 (S.D. Ohio 2011).  In establishing bad faith, "[m]ere knowledge … of another's actual use of a mark is insufficient…" *Id*. at 1112.  Here, BSPT has consistently maintained that its use of the BSPT Mark does not infringe Plaintiff's rights, and therefore Plaintiff cannot support a claim for fraud.

### iv.     Plaintiff's Evidence of Actual Confusion Is Unpersuasive

Courts have frequently rejected evidence of actual confusion that is either not credible or is given by interested parties. *See, e.g., Art Attacks Ink, LLC v. MGA Enter. Inc.*, 581 F.3d 1138, 1147 (9th Cir. 2009) (rejecting evidence from witnesses who were either employees or personal friends); *Valador, Inc. v. HTC Corp.*, 241 F. Supp. 3d 650, 669 (E.D. Va. 2017) ("Needless to say, the single opinion regarding actual confusion from a plaintiff-insider who happens to be the CEO's friend (but has never been one of plaintiff's consumers) carries no weight here."). Here, Plaintiff's evidence of actual confusion consists of:[5] (1) an email from Mr. Tad Tokarz to Plaintiff's Program Manager of Rehabilitation Services asking if BSPT's Springfield location is associated with Plaintiff; and (2) an affidavit from Plaintiff's employee Martha Harrington stating that "several of her friends and acquaintances" have asked her about a potential affiliation between the parties. *See* Dkt. 11, at 14-15, Dkt. 14, 15.  Plaintiff's evidence appears to be given solely by interested parties and should therefore be rejected.

First, as it concerns Mr. Tokarz, it is clear from Mr. Tokarz's correspondence that he has a personal relationship with Plaintiff's Program Manager.  Plaintiff's Program Manager is named James Maloney, and yet in his email Mr. Tokarz addresses Mr. Maloney with the informal "Jimmy," a nickname for James typically used by friends and close acquaintances, not strangers. *See* Dkt. 15, Ex. B.  Given the apparent relationship with Plaintiff's employee, Mr. Tokarz is an interested party and his claims of confusion should be discounted accordingly.

The second affidavit is from Plaintiff's employee, another interested source, who is reporting on alleged confusion by her friends and acquaintances.  Plaintiff provides no evidence that these friends and acquaintances of Plaintiff's employee are current or potential customers of

---

[5] Plaintiff also alleges that a review left on BSPT's website stating that the reviewer "came to Baystate" is evidence of actual confusion.  This is more likely a simple typographical error made by the reviewer. *See* Dkt. 11 at 14.

Plaintiff, and thus that their confusion would be relevant to Plaintiff's infringement claim. *See, e.g., Packman v. Chi. Tribune Co.*, 267 F.3d 628, 645 (7th Cir. 2001) (holding that the supposed actual confusion among four of plaintiff's friends, none of whom had attempted to purchase the parties' goods, was "irrelevant to the question of confusion") (quotation marks omitted). This additional evidence of actual confusion should likewise be disregarded.

### v.   The Parties' Respective Consumers are Sophisticated.

The parties' customers are unlikely to make impulsive decisions about their healthcare, further evidencing that no likelihood of confusion exists. Courts have recognized that consumers exercise a "heightened standard of care" in selecting medical services. *See UHS of Del., Inc. v. United Health Servs.*, 227 F. Supp. 3d 381, 395 (M.D. Pa. 2016) ("such important decisions doubtless trigger a heightened standard of care in the ordinary consumer"); *see also Carefirst of Md., Inc. v. FirstHealth of the Carolinas Inc.*, 77 U.S.P.Q.2d 1492, 2005 WL 2451671, at *13 (T.T.A.B. 2005) ("Simply put, in purchasing healthcare services, even ordinary consumers are likely to exercise greater care and will know with whom they are dealing.") (citation omitted). Plaintiff has also recognized this higher standard of care, stating in response to a likelihood of confusion rejection by the USPTO that "clients or potential users of such [medical] services would be relatively sophisticated and deliberative in the selection of medical services." Martinez Aff., Ex. 2. This factor thus additionally weighs against a finding of likelihood of confusion.

### D.   BSPT is Likely to Succeed on a Defense of Laches

It is unnecessary for the Court to consider BSPT's affirmative defense of laches, because Plaintiff has failed to make a showing that it is likely to succeed on its claims. However, even if Plaintiff had made the requisite showing of valid prior rights and a likelihood of confusion, its motion should still be denied due to laches. To assert laches, BSPT "must prove by a preponderance of the evidence (1) that [Plaintiff] inexcusably and unreasonably delayed in

16

bringing this action; and (2) that the delay has prejudiced [BSPT]." *Lotus Dev. Corp. v. Paperback Software Int'l*, 740 F. Supp. 37, 82 (D. Mass. 1990).  As discussed above, Plaintiff admits that it has known about BSPT's use of the BSPT Mark since 2008.  In the intervening twelve years, Plaintiff did nothing while BSPT secured an incontestable trademark registration and opened forty new locations throughout New England.  These facts establish a *prima facie* laches defense, making it even less likely that Plaintiff's claim can succeed.

## III.    Plaintiff Has Not Suffered Irreparable Injury.

Plaintiff has not suffered irreparable injury such that a preliminary injunction is appropriate.  "Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered."  11A Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 2948.1 (Aug. 2019).  Despite its importance, Plaintiff devotes just one paragraph to its claim that it will suffer irreparable injury if the Court does not issue a preliminary injunction.  *See* Dkt. 11 at 17.  Not one of Plaintiff's declarants attests to any actual harm occurring in the eight months Plaintiff and BSPT have coexisted in Springfield, or the twenty-five years they have coexisted in Massachusetts.  *See* Dkt. 13-15.

Instead of substantiating actual or even predicted harm, Plaintiff's counsel points to the presumption that proof of likelihood of confusion establishes irreparable harm and argues that it will lose reputation and goodwill absent a preliminary injunction.  *See* Dkt. 11 at 17.  First, as Plaintiff rightly notes, the First Circuit has questioned the presumption that proof of likelihood of confusion establishes irreparable harm.  *See Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32-35 (1st Cir. 2011); *see also Bassett v. Jensen*, No. 18-10576-PBS, 2019 WL 5457771, at *2 (D. Mass. Oct. 24, 2019) (finding that the presumption is "no longer the law").

Second, Plaintiff long delayed in bringing its Motion. To the extent this Circuit still recognizes a presumption, it "'is inoperative if the plaintiff has delayed either in bringing suit or in moving for preliminary injunctive relief.'" *Voice of the Arab World*, 645 F.3d at 35 (quoting *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995)). Plaintiff first claimed that BSPT's use of the BSPT Mark infringed Plaintiff's rights in 2008. Plaintiff's delay of **twelve years** severely undercuts Plaintiff's claim of irreparable harm. *See supra* Section I; *see also Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 163 (1st Cir. 2004) ("[plaintiff's] cries of urgency are sharply undercut by its own rather leisurely approach to the question of preliminary injunctive relief").

Finally, Plaintiff's only additional alleged harm is its attorney's argument that BSPT is damaging Plaintiff's reputation and goodwill. *See* Dkt. 11 at 17. Plaintiff bases this claim on its characterization of BSPT's advertisements as akin to those put out by "ambulance chasing lawyers." *Id*. This preposterous characterization does not prove harm to the Plaintiff.

## IV.   Plaintiff Does Not Allege Any Injury Which Outweighs the Harm BSPT Would Suffer if a Preliminary Injunction Were Granted.

Where, as here, a plaintiff is unlikely to succeed on its infringement claim and further significantly delayed in bringing suit, the balance of harms favors the defendant. *See Jagex Ltd. v. Impulse Software*, 750 F. Supp. 2d 228, 239 (D. Mass. 2010) ("[Plaintiff] has not made a strong showing of likelihood of success and, accordingly, the balance of the equities favors the defendants."). Furthermore, while Plaintiff's declarants failed to identify any actual harm that has occurred during the parties' coexistence in Springfield, BSPT's declarant Dr. Windwer identified material hardship that will result if the motion is granted. *See* Windwer Aff., ¶¶ 24-32. "The purpose of a preliminary injunction is to preserve the status quo, freezing an existing situation so as to permit the trial court, upon full adjudication of the case's merits, more effectively to remedy

discerned wrongs." *CMM Cable Rep., Inc. v. Ocean Coast Props., Inc.*, 48 F.3d 618, 620 (1st Cir. 1995). Here, granting the injunction will change the status quo, and damage BSPT without any evidence of harm to the Plaintiff, and thus the motion should be denied.

## V. A Preliminary Injunction Would Harm the Public Interest.

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). The world is currently experiencing a global pandemic. Healthcare workers (including both Plaintiff's and BSPT's employees) face extraordinary demands on their time and resources. Courts have recognized the seriousness of the ongoing health crisis, and the strong public interest in refraining from filing dubious motions for "urgent" relief in the midst of a true emergency. *See. e.g., Art Ask Agency v. The Individuals, et al.*, No. 20-cv-1666, 2020 U.S. Dist. LEXIS 49954 (N.D. Ill. March 18, 2020) ("The world is facing a real emergency. Plaintiff is not.").

Despite the pandemic, Plaintiff, a healthcare provider with multiple hospitals, has chosen to divert resources away from its employees and patients in order to seek a preliminary injunction that would necessarily require individuals to engage in non-essential activities that put them at risk of spreading the virus. If Plaintiff were granted its preliminary injunction, BSPT would be forced to have its employees remove or cover all brochures, signs and other materials that include the BSPT Mark. *See* Windwer Aff., at ¶ 31. These actions risk BSPT employees coming into contact with surfaces or persons that carry the virus. *Id*. Furthermore, if a preliminary injunction were granted, BSPT would need to remove the sign that currently identifies its Springfield location by hiring a third party. *Id*. at ¶ 27-28. Plaintiff's request that BSPT, its employees and third parties all engage in non-essential activities during this time of crisis is simply not in the public's interest.

Finally, the public interest favors no one business being able to monopolize the Massachusetts nickname "Bay State." Hundreds of Massachusetts-based businesses currently use the term "Bay State" in their names, including numerous businesses in the healthcare field. *See supra* Section II.B.i; Martinez Aff., Ex. 6. In such a crowded field, Plaintiff does not have the right to exclude other uses of BAY STATE. As such, the public interest weighs against Plaintiff claiming an exclusive right to use BAYSTATE in connection with healthcare services.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion should be denied. As Plaintiff filed this motion without evidentiary or legal support, misrepresented the facts and the law, and failed to confer with counsel, BSPT respectfully requests that it be awarded attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## **REQUEST FOR ORAL ARGUMENT**

BSPT respectfully requests oral argument via teleconference or video conference on this Motion, pursuant to General Order 20-2.

Dated: April 16, 2020

Respectfully submitted,

McGuireWoods LLP

/s/ *Carolee A. Hoover*
Carolee A. Hoover (BBO No. 665104)
McGuireWoods LLP
Two Embarcadero Center
Suite 1300
San Francisco, California 94111
Telephone: 415-844-1971
Facsimile: 415-844-1914
choover@mcguirewoods.com

Lucy Jewett Wheatley (*pro hac vice* pending)
McGuireWoods LLP
800 East Canal Street
Richmond, Virginia 23219

Telephone: 804-775-4320
Facsimile: 804-698-2017
lwheatley@mcguirewoods.com

*Counsel for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing document has been served on all counsel of record via this Court's ECF system on April 16, 2020.

<u>/s/ *Carolee A. Hoover*_____</u>
Carolee A. Hoover

22