UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| BAYSTATE HEALTH, INC., ) | |
| ) | Civil Action No. 3:20-cv-30042-MGM |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| BAY STATE PHYSICAL THERAPY, P.C., ) | |
| BAY STATE PHYSICAL THERAPY OF ) | |
| RANDOLPH, INC., & STEVEN WINDWER, ) | |
| ) | |
| Defendants. ) | |

**REPLY OF**

**PLAINTIFF BAYSTATE HEALTH, INC.**

**IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

April 30, 2020

As discussed below, the opposition ("Opp.") filed by Defendants provides no credible basis for denying the motion of Plaintiff Baystate Health, Inc. ("Baystate"), but instead makes only an extraordinary number of false and irrelevant assertions in support of inapplicable law.

1. **Defendants Misrepresent the Basis of Baystate's Request for Relief, Which is that Defendants Are Causing Irreparable Harm to Baystate and This Community By Violating Baystate's Well-Established Common Law Rights to the BAYSTATE Mark in Western Massachusetts.**

Defendants recognize that a party's common law trademark rights established in a trade area before another party's federal registration of a confusingly-similar mark entitle it to exclude the latter's use of the mark in that area. Opp. at 8-9. Defendants, however, falsely claim that Baystate "did not make this argument" in its initial brief. *Id.* at 9. Yet, that is *precisely* what Baystate argued: that is, that Baystate established its common law rights in BAYSTATE in Western Massachusetts as the identifier of Baystate's healthcare services long before Defendants registered their confusingly similar mark or used it in this area. Dkt 11 at 9-11.[1] They cannot now exploit the mark in this area to the detriment of Baystate and the area's consumers.

2. **Baystate Established Its Common Law Rights To The BAYSTATE Mark In This Trade Area Long Before April 12, 2011.**

Defendants registered their mark on April 12, 2011. Baystate has shown in its principal brief that it will establish that its BAYSTATE mark had become distinctive as designating the source of its specific services at least by that date. *See, e.g.,* Dkt 11-24 (Baystate began use of its mark in 1976); Dkt 15 ¶¶ 2-4 (use of mark in Western Massachusetts for decades to designate health care services, including physical therapy); Dkt 11-1 at 30 (1999); Dkt 11-15 at 20 (mark

---

[1] Baystate will demonstrate during trial several bases for other relief under both federal and state law, including that Defendant's registration is invalid by reason of fraud on the USPTO. Those arguments, however, are unnecessary for the only relief sought with the present motion; that is, to stop immediately the irreparable damage caused by Defendants' common law infringement of the BAYSTATE mark in Baystate's immediate trade area.

achieved regional fame by 2008); *see also* Ex. 37 (submission of uncontested affidavit to the USPTO in 2001 declaring BAYSTATE mark distinctive due to continuous use by Baystate since at least 1988);  Ex. 38 (showing use of physical therapy services in 1994); Ex. 39 (early fame).

### 3. The Alleged "Incontestable" Status of Defendants' Registered Trademark is Irrelevant.

Defendants claim repeatedly that their "Incontestable Trademark Registration is Conclusive Evidence of Its Exclusive Right to Use BAY STATE PHYSICAL THERAPY." *See* Opp. at -i-, 1, and 8. This is a misleading statement of both fact and law. First, Defendants' do not have the exclusive right to use the words "BAY STATE PHYSICAL THERAPY"; to the contrary, Defendants have conceded in the very registration upon which they rely that they have no "exclusive right" to use "Bay State Physical Therapy," other than as part of a combined mark that includes a design consisting of "four elliptical boxes with the upper left box containing an image of a person on a bicycle; the upper right box containing an image of a person running; the bottom left box containing, etc." *See* Dkt 18-2 at 27 ("No claim is made . . . "). This combined design mark is their "incontestable mark"; not the phrase "Bay State Physical Therapy."[2] Second, an "incontestable" mark is *not* conclusive of the right of a party to use the mark in, *inter alia*, the precise circumstances at issue here; that is, "to the extent, if any, to which the use of a mark . . . infringes a [common law right] continuing from a date prior to [that mark's registration]." 15 U.S.C. §1065; *see also Dorpan, S.L. v. Hotel Melia, Inc.*, 728 F.3d 55, 64 (1st Cir. 2013).  Thus, Defendants' right to use their combined mark incorporating Baystate's most fundamental trademark is "contestable" in the exact situation before the Court: where Baystate's

---

[2]  Baystate acknowledges that it previously disclaimed the right to use the BAYSTATE wordmark alone. That, however, last occurred nearly thirty years ago, in 1991. *See* U.S. Reg. No. 1,648,384, Martinez Aff., Ex. 3 at 11. The secondary meaning underlying that mark quickly grew, however, and Baystate's registration of the BAYSTATE mark, filed on October 22, 2001, contains no such disclaimer. *See* Dkt 11-1 at 10; Martinez Aff., Ex. 4.

2

common law right to use BAYSTATE to identify its health care services[3] in this specific area precedes Defendants' date of registration of its combined mark.

**4.  *Bay State Sav. Bank v. Baystate Fin. Servs.* is Not Relevant to Plaintiff's Motion.**

*Bay State Sav. Bank v. Baystate Fin. Servs., LLC*, 484 F. Supp. 2d 205 (D. Mass. 2007) involved the terms "Bay State" and "Baystate," which were understood to be equivalent. Beyond that, the case, relied upon heavily by Defendants, is wholly irrelevant to Plaintiff's motion.  *Bay State Savings Bank* involved two entities that each "first used" the same mark *in the same trade area*. It did *not* involve two entities that first used a mark in different trade areas, with the second entity moving into the first entity's trade area after the latter had established the mark as the identifier of its specific services. The district court did not alter fundamental trademark law that a party's common law rights to the use of a mark is defined by "first use" in the geographical region in which the mark has come to identify that party's products or services. *See, e.g.*, *Thrifty Rent-A-Car Sys., Inc. v. Thrift Cars, Inc*., 831 F.2d 1177 (1st Cir. 1987) (national company, that used mark before local company but did not register it or use it in local company's trade area until after local company had established the mark in that area, enjoined from using it in that area).[4]  As Defendants have only just begun to use the BAYSTATE mark in this trade area, their earliest possible relevant "first use" date would be the date of its "constructive notice," April 12, 2011, provided by their registration of their combined mark (if valid) that incorporated Baystate's mark. *See* 831 F.2d at 1180.

---

[3] Defendant's argument that Baystate's enjoys no "presumption of priority" with respect to physical therapy services, Opp. at 8, is frivolous. Certainly they do not contest that "physical therapy" is encompassed by the description, "efforts made to maintain or restore physical, mental, or emotional well-being especially by trained and licensed professionals." *See* Merriam Webster, "health care" definition (available at https://www.merriam-webster.com/dictionary/health%20care, last viewed Apr. 29, 2020).

[4]  Judge Young, in the opinion supporting the decision upheld in the cited case by the First Circuit, provided an excellent discussion of these parameters of trademark law. *See Thrifty Rent-A-Car System, Inc. v. Thrift Cars, Inc.*, 639 F. Supp. 750, 752-54 (D. Mass. 1986).

3

### 5. Defendants' Opposition Contains Other Demonstrably False Statements of Fact.

It is troubling that Defendant's Opposition falsely accuses Baystate of having "misrepresented central facts" when that very document contains so many key misrepresentations. In addition to those discussed above, Defendants assert that "as recently as 2001, Plaintiff disclaimed exclusive rights to the term BAYSTATE." Opp. at 10. This is simply not true. Indeed, the very filings Defendants cite show that Baystate last disclaimed certain rights in BAYSTATE -- when used in a combined mark -- in 1991 and that it provided no such disclaimer when it applied to register BAYSTATE as a standalone wordmark in 2001. Martinez Aff., Ex. 3 at 11; *id.,* Ex. 4 at 1. Defendants similarly state falsely that Baystate has asserted that an exhibit "evidences an 'agreement'" between the parties, whereas Baystate's brief explicitly states that such "agreement was not consummated." *Compare* Opp. at 1 *with* Dkt 11 at 4.[5]

### 6. Defendants' Other Irrelevant Evidence and Argument.

As purported evidence of the "weakness" of Baystate's mark, Defendants offer the corporate names of four Springfield-based companies. Opp. at 12-13. Those parties, however, are using the BAYSTATE mark under license from and under the control of Baystate. *See* Exs. 40-42. Also irrelevant to the strength of the BAYSTATE mark in Western Massachusetts are the corporate names of businesses that use their mark in Greater Boston. *See, e.g.,* Dkt 18-4 at 171. Plaintiff's suggestion that the addition of a text or design element to a well-known brand such as BAYSTATE helps avoid consumer confusion misses the mark; Defendants do not always use

---

[5] Similarly, Defendants' accusation that counsel failed to confer is contrary to the record. *See* Martinez Aff., Ex. 9. Defendants also frequently misrepresent the evidence submitted by Baystate, falsely alleging that "[u]ntil 2019, none of Plaintiff's trademark filings identified physical therapy services," *compare* Opp. at 11 n.3 *with* Dkt 11-1 at 30; that Baystate does not attest to a first or continuous use of its mark(s), *compare* Opp. at 11 *with, e.g.*, Dkt 11-2; that Baystate does not identify where it advertises, *compare* Opp. at 11 *with* Smith Aff. ¶ 3; and that Baystate offered no evidence that its trade area encompasses all of Western Massachusetts, *compare* Opp. at 11 *with, e.g.,* Dkt 11-15, *see also* Dkt 11 at 10 n.7 (identifying entire trade area and geographical focus of motion for preliminary injunction).

the design element, *see, e.g.* Dkt 11-5, 11-16, plus, given the predominance of "BAY STATE" in both marks, Baystate's growing family of marks, and the frequency of mergers in the industry, a consumer viewing Defendants' mark is likely to assume that Baystate has opened a new physical therapy location, Dkt 15 ¶ 7, thereby adding to their source confusion.  *See TriMark USA, Inc. v. Performance Food Grp. Co., LLC*, 667 F. Supp. 2d 155, 162-164 (D. Mass. 2009).  Finally, also contrary to Defendants' assertions, evidence of actual confusion by a person such as Mr. Tokarz, *see* Dkt 15 at 11, who is both a potential consumer and a person positioned to directly influence the decisions of consumers, is persuasive, *see Beacon Mut. Ins. Co v. OneBeacon Ins. Grp.*, 376 F. 3d 8, 16-17 (1st Cir. 2004), as may be evidence of actual confusion presented by employees. *See, e.g. Star Fin. Servs., Inc. v. AASTAR Mortg. Corp.*, 89 F.3d 5, 11 (1st Cir. 1996).[6]

### 7. Baystate's Injury is Immediate, Ongoing, and Irreparable.

Defendants' use of the BAY STATE mark in Baystate's own backyard is a qualitatively different harm than from their use of the mark in the more geographically removed Greater Boston area.[7]  This harm is not one Baystate could have reasonably anticipated, given Defendants' longstanding course of conduct and its counsel's presumed familiarity with the common law. The harm to Baystate's reputation and control of its perceived brand that is evident from consumers' confusion as to source is exacerbated by Baystate's leading role in the regional response to COVID-19, *see* Dkt 11-17.  It is more critical now than ever that healthcare consumers know with whom they are dealing.

---

[6] In addition, the USPTO's determination ten years ago that Defendants' mark was not likely to cause confusion with another registered mark is entitled to little or no weight in this proceeding, where there is no indication that the USPTO reviewed Baystate's registrations or other evidence of common law rights currently available when it made such a determination.  *See Trimark USA, Inc.*, 667 F. Supp. 2d at 164 (citations and quotations omitted).

[7] There was no "delay" between Baystate's discovery of Defendants' use of the mark in Springfield around November 2019 and its decision to seek judicial relief. Baystate simply did not seek this Court's intervention until it became clear that its attempts to resolve the issue without litigation, *see, e.g.,* Dkt 11-27, were useless.

RESPECTFULLY SUBMITTED

PLAINTIFF, BAYSTATE HEALTH, INC.
By Its Attorneys,

/s/ *Mary R. Bonzagni*
Mary R. Bonzagni, Esq. (BBO # 553771)
James C. Duda, Esq. (BBO # 551207)
Lauren C. Ostberg, Esq. (BBO # 696883)
Bulkley, Richardson and Gelinas, LLP
1500 Main Street, Suite 2700
Springfield, MA 01115-5507
Tel. (413) 272-6286
mbonzagni@bulkley.com
jduda@bulkley.com
lostberg@bulkley.com

Dated: April 30, 2020

## **CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system on April 30, 2020, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing ("NEF") and electronic copies will be sent to those indicated as non-registered participants on the date of its filing.

/s/ *Lauren C. Ostberg*
Lauren C. Ostberg

3274036v2