UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BAYSTATE HEALTH, INC.,<br><br>      Plaintiff<br><br>   v.<br><br>BAY STATE PHYSICAL THERAPY, P.C., BAY STATE PHYSICAL THERAPY OF RANDOLPH, INC., AND STEVEN WINDWER,<br>      Defendants. | Civil Action No. 3:20-cv-30042-MGM |

### DEFENDANTS' SUR-REPLY IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Plaintiff's Reply fails to cure the fatal weaknesses in its Motion. Plaintiff does not (because it cannot) rebut the key points that require denying Plaintiff a preliminary injunction, including:

➢ Plaintiff has been aware of BSPT since at least 2008, and thus delayed for **twelve years** before bringing its Motion, *see* Dkt. 18-1 at Ex. 2;

➢ Plaintiff operates numerous locations under the BAYSTATE mark in and around Boston, mooting Plaintiff's argument that BSPT's Springfield location is somehow distinct as the first instance of geographic overlap between the parties and revealing that the parties have coexisted in the same locality without known confusion for years, *see* Dkt. 18-3 at Ex. 1;

➢ Plaintiff cannot establish that its mark has acquired secondary meaning in connection with physical therapy services at all, much less prior to BSPT's first use of the BSPT Mark in 1995, and thus cannot succeed on its trademark infringement claim; and

➢ BSPT, and not Plaintiff, has an incontestable federal trademark registration to use "Bay State" in connection with physical therapy.

These key facts, which Plaintiff ignored and thus conceded, are alone sufficient to deny the Motion.

1

Furthermore, Plaintiff's arguments in its Reply are critically flawed.[1]

➢ *First*, Plaintiff has not proved that it has common law rights in the BAYSTATE mark in connection with physical therapy services that **predate** BSPT's first use.  To establish prior common law rights, Plaintiff must present evidence that its mark had secondary meaning in connection with physical therapy services prior to BSPT's first use in 1995.  *Bay State Sav. Bank v. Baystate Fin. Servs., LLC (Bay State II)*, 484 F. Supp. 2d 205, 214 (D. Mass. 2007).  Given a second bite at the apple, Plaintiff again fails to produce any evidence.

Instead, Plaintiff furnishes only evidence of BAYSTATE used with its hospital services, and: 1) a conclusory declaration that Plaintiff's mark has been used with physical therapy for "decades," (which, even if accurate, could place Plaintiff's first use after BSPT's first use), *see* Dkt. 15, ¶ 2;  2) a 2019 article which plaintiff claims proves use with physical therapy, but that discusses heart surgery and does not mention "physical therapy", *see* Dkt. 24-2 at Ex. 38; and 3) a printout from Plaintiff's website showing that it currently offers physical therapy, *see* Dkt.11-19; Dkt. 23 at 2-3.

None of these items prove that Plaintiff used BAYSTATE with physical therapy prior to 2020, much less prior to 1995.  And none of this evidence proves Plaintiff's mark acquired secondary meaning for physical therapy services prior to BSPT's first use.  *C.f. Bay State II*, 484 F. Supp. 2d at 214-17 (holding that plaintiff's evidence of 100 years of use with banking, a federal trademark registration for "financial and investment services", extensive advertising, evidence of use with investments and insurance, and consumer surveys, was still insufficient to show secondary meaning for BAY STATE in connection with investments and insurance); *see Bay State Sav. Bank v. Baystate Fin. Servs., LLC (Bay State I)*, 338 F. Supp. 2d 181, 188 (D.

---

[1] Plaintiff submitted new evidence in its Reply, which is not permitted.  *Shell Co. v. Los Frailes Serv. Station*, 596 F. Supp. 2d 193 (D. Mass. 2008) (granting motion to strike evidence in reply). Even so, Plaintiff cannot meet its burden.

Mass. 2004) ("Given the location of both parties in Massachusetts . . . [plaintiff] simply cannot sustain its claim that the use of the "Bay State" mark allows it to exclude all competitors that bear a similar name and operate in a similar field."). Plaintiff's failure to produce any evidence of use with physical therapy prior to 1995 is a strong indicator no such evidence exists.

➤ ***Second***, Plaintiff claims that BSPT's statement that its incontestable registration is conclusive evidence of its exclusive rights in its mark is "misleading." *See* Dkt. 23 at 2. BSPT, however, is quoting from the Lanham Act: An incontestable "registration **shall be conclusive evidence** … **of the registrant's exclusive right to use the registered mark in commerce**." 15 U.S.C. § 1115. As Plaintiff did not prove prior common law rights for physical therapy, it cannot overcome BSPT's incontestable registration for its mark with physical therapy.

➤ ***Third***, Plaintiff claims that the *Bay State* case is "wholly irrelevant" and did not involve geographically distinct use. *See* Dkt. 28 at 3. *Bay State*, however, is directly on point and did involve geographically distinct use. In *Bay State*, after years of coexistence between the plaintiff in Worcester and the defendant in Boston, the defendant opened across the street from plaintiff's headquarters in Worcester, and the plaintiff filed suit. *Bay State I*, 338 F. Supp. 2d at 186 (noting lawsuit began after defendant's "expansion from its headquarters in Boston to central Massachusetts"). As here, the plaintiff also sought a preliminary injunction, which was denied. *Id*. at 191. Also directly on point, the previous *Bay State* case involved a plaintiff asserting trademark rights against a defendant who used the mark with related, but distinct, services. *Id.* at 189. In *Bay State*, the court declined to find that prior use with banking proved common law rights and secondary meaning with respect to financial services generally, or the subset of insurance and investments. *Id.* ("Even if the Court were to assume that [plaintiff] has established secondary meaning in its marks among savings banks, that conclusion is insufficient to preclude [defendant]

altogether from using a similar mark within the financial services industry.") Similarly, Plaintiff here relies on its use with hospitals to assert rights in all healthcare services, including the distinct field of outpatient physical therapy.[2] Exactly as in *Bay State I* and *II*, Plaintiff's evidence of common law rights and secondary meaning is wholly inadequate.

> ➤ ***Fourth***, Plaintiff's claims of misrepresentations by BSPT are easily rebutted. For example, it is demonstrably true that Plaintiff disclaimed rights in BAYSTATE as recently as 2001. Prior to Plaintiff's BAYSTATE trademark filing in 2001, all of Plaintiff's trademark filings disclaimed BAYSTATE. These disclaimers are not limited to when Plaintiff made them—instead, as recently as 2001 all of Plaintiff's trademark registrations included this disclaimer. Dkt. 18-3 at Ex. 3, 4.

Moreover, as it concerns the prior settlement correspondence, Plaintiff was clearly misleading the Court when it stated: "Baystate understood that BSPT was willing to limit its use of the term BAY STATE to physical therapy clinics located east of the western boundary of Worcester County." *See* Dkt. 11 at 4. Plaintiff was well aware that BSPT had not agreed to limit its geographic area, *see* Dkt. 18-1 at Ex. 10, and yet claimed that it believed such an agreement was in place while failing to provide the Court with its own statements to the contrary.[3]

> ➤ ***Fifth***, Plaintiff's other examples of BSPT's alleged "false statements' are belied by a review of the evidence. For example, despite Plaintiff's claims, BSPT correctly asserted that Plaintiff did not identify **where** it advertises. *See* Dkt. 23 at 5. In attempting to contradict this claim, Plaintiff points to this line in an affidavit: "Baystate advertises online, through social media, on billboards, and in the local press." *See* Dkt. 13 at ¶ 3. This paragraph clearly does not identify

---

[2] The *Thrifty* case, cited by Plaintiff, did not involve a descriptive mark or distinct services (in fact the parties stipulated to confusion), but also required the senior user to prove its common law rights in its alleged trade area prior to the junior user's registration of a federal trademark. *Thrifty Rent-A-Car Sys., Inc. v. Thrift Cars, Inc.*, 831 F.2d 1177, 1179, 1181 (1st Cir. 1987). As discussed above, Plaintiff has failed to prove common law rights in physical therapy at all, much less prior to 2011, when BSPT federally registered its trademark. Dkt. 18-2 at 27.
[3] Additionally, it is evident from Plaintiff's emails that it did not confer with BSPT's counsel prior to filing its Motion. *See* Dkt. 18-4 at Ex. 9. Plaintiff never even advised BSPT's counsel that it intended to file its Motion. *Id*.

the geographic locations where Plaintiff advertises, which is the relevant information in order to establish Plaintiff's claimed rights in all of western Massachusetts, where its seeks to enjoin BSPT.

> *Sixth*, Plaintiff also argues that its mark is not weak because it has entered into licenses with three Springfield healthcare providers that use BAYSTATE. *See* Dkt. 23 at 4. Plaintiff does not address, however, the more than 1,800 other Massachusetts BAY STATE businesses, including the twelve other BAY STATE healthcare providers. *See* Dkt. 18 at 12-13. Moreover, Plaintiff's license agreements[4] demonstrate only that Plaintiff has deemed it non-confusing for Springfield healthcare providers to use logos that differ substantially from Plaintiff's own:

  

With multiple trademark logos that incorporate BAYSTATE used by third parties in the Springfield area, consumers **are not** likely to believe that BSPT is connected to Plaintiff merely due to the use of BAY STATE. Indeed, this case stands in stark contrast to the *TriMark* case cited by Plaintiff. *TriMark USA, Inc. v. Performance Food Group Co., LLC*, 667 F. Supp. 2d 155 (D. Mass. 2009) (finding that the parties' highly similar logo treatments were likely to cause confusion). Furthermore, Plaintiff bears the burden to prove the strength of its mark, and by heavily redacting the licenses, it has not proved that they are valid.

> *Finally*, despite being given a second opportunity, Plaintiff has again failed to provide any evidence of actual harm, instead relying solely on argument. *See* Dkt. 23 at 5. The failure to prove harm alone is sufficient reason to deny Plaintiff's Motion.

    For the foregoing reasons, Plaintiff's Motion should be denied.

---

[4] The heavily redacted licenses do not indicate that Plaintiff exercises control over these entities, and thus are likely invalid. *See* 3 J. Thomas McCarthy, *McCarthy on Trademarks* § 18:48 (5th ed. March 2020). Further, each agreement states that it was entered to resolve infringement, making it clear these are wholly separate businesses.

| | |
|---|---|
| Dated: May 7, 2020 | Respectfully submitted,<br><br>MCGUIREWOODS LLP<br><br>/s/ *Lucy Jewett Wheatley*_____<br>Carolee A. Hoover (BBO No. 665104)<br>MCGUIREWOODS LLP<br>Two Embarcadero Center<br>Suite 1300<br>San Francisco, California 94111<br>Telephone: 415-844-1971<br>Facsimile: 415-844-1914<br>choover@mcguirewoods.com<br><br>Lucy Jewett Wheatley (admitted *pro hac vice*)<br>MCGUIREWOODS LLP<br>800 East Canal Street<br>Richmond, Virginia 23219<br>Telephone: 804-775-4320<br>Facsimile: 804-698-2017<br>lwheatley@mcguirewoods.com<br><br>*Counsel for Defendants* |

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing document has been served on all counsel of record via this Court's ECF system on May 7, 2020.

                                       /s/ *Lucy Jewett Wheatley*
                                       Lucy Jewett Wheatley