UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BAYSTATE HEALTH, INC., | * |
| | * |
| Plaintiff, | * |
| v. | * |
| | *  Civil Action No. 20-30042-MGM |
| BAY STATE PHYSICAL THERAPY, P.C, | * |
| BAY STATE PHYSICAL THERAPY OF | * |
| RANDOLPH, INC., &. STEVEN WINDWER, | * |
| | * |
| Defendants. | * |

MEMORANDUM AND ORDER REGARDING
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
(Dkt. No. 10)

December 15, 2020

MASTROIANNI, U.S.D.J.

## I.   INTRODUCTION

Since 1976, Plaintiff, Baystate Health, Inc. ("Baystate" or "Plaintiff") has operated health care facilities in Western Massachusetts under the BAYSTATE mark. Plaintiff's health system now includes multiple hospitals and a network of more than eighty medical practices. Baystate has invested resources to establish its BAYSTATE mark, including obtaining eight active state and federal registrations incorporating the BAYSTATE mark. These include a state trademark registration from 1999 that listed physical therapy among the services provided in connection with the mark and a federal trademark registration for health care services, for which an application was first filed on October 22, 2001 and which achieved incontestable status on October 14, 2008.

On March 9, 2020, Plaintiff filed this action against Defendants, Bay State Physical Therapy, P.C., Bay State Physical Therapy of Randolph, and Steven Windwer, the owner of these entities. The suit alleges Defendants have violated Plaintiff's BAYSTATE mark by opening a new location in Springfield, Massachusetts under the Bay State Physical Therapy name and logo in November of 2019. Though Defendants operate approximately 60 locations in Massachusetts, New Hampshire, and Rhode Island, prior to opening the Springfield location, Defendants did not have any locations in Massachusetts west of Worcester County. They have used the Bay State Physical Therapy ("BSPT") name in Massachusetts since 1995. The BSPT mark, which is a combination of the name and logo, was federally registered in 2011 and later became incontestable. Plaintiff first became aware of Defendants' business and the BSPT mark in 2008. At that time Defendants only operated locations in eastern Massachusetts. The parties exchanged some correspondence at that time and had discussions about BPST licensing the BAYSTATE mark. The parties did not execute an agreement and Defendants continued to use the BPST mark as their business grew. Plaintiff took no further actions to enforce the BAYSTATE mark against Defendants until after Defendants opened the Springfield location at the center of this action.

Several weeks after commencing this action, Plaintiff filed a Motion for Preliminary Injunction seeking an order compelling Defendants to stop using the term Bay State together with Physical Therapy, or any term referring to health care services, in any Massachusetts county west of Worcester County. (Dkt. No. 10.) A hearing was held on May 15, 2020, at which the court and parties all appeared telephonically. For the reasons that follow, the court will deny Plaintiff's Motion for Preliminary injunction.

## II.     LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy that is never awarded as of right." *Peoples Fed. Sav. Bank v. People's United Bank,* 672 F.3d 1, 8-9 (1st Cir. 2012) (quoting *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir.2011)). "To obtain a preliminary injunction, the plaintiff[] bear[s] the burden of demonstrating (1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest." *Nieves-Márquez v. Puerto Rico*, 353 F.3d 108, 120 (1st Cir. 2003). Though each element must be established by Plaintiffs, "likelihood of success on the merits is the most important of the four preliminary injunction factors." *Doe v. Trustees of Boston Coll.*, 942 F.3d 527, 533 (1st Cir. 2019). "This is so especially in a trademark infringement case, since 'the resolution of the other three factors will depend in large part on whether the movant is likely to succeed in establishing infringement.'" *Swarovski Aktiengesellschaft v. Bldg. No. 19, Inc.*, 704 F.3d 44, 48 (1st Cir. 2013) (quoting *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 115 (1st Cir. 2006)). Nevertheless, the plaintiff retains the burden of satisfying *each* factor. *See Mass. Coal. of Citizens with Disabilities v. Civil Def. Agency & Office of Emer. Prep. of Com. of Mass.*, 649 F.2d 72, 74 (1st Cir. 1981). Finally, while a plaintiff defending against a motion to dismiss is entitled to have the court treat all well-pled facts as true and draw all reasonable inferences in the plaintiff's favor, *S.E.C. v. Tambone*, 597 F.3d 436, 441 (1st Cir. 2010), a plaintiff seeking a preliminary injunction bears the burden of proof as to each required element, *Nieves-Márquez,* 353 F.3d at 120.

## III.     DISCUSSION

Plaintiff's complaint includes claims relating to its common law rights, concerning marks registered with both the state and at the federal level, and challenging the validity of BSPT's federal

3

mark. However, Plaintiff's reply brief clarifies that its request for a Motion for Preliminary Injunction is based on the irreparable harm that will be caused to the community resulting from violations of Plaintiff's common law rights to the BAYSTATE mark, established in western Massachusetts prior to Defendants' registration of the BSPT mark in 2011. (Pl. Reply, Dkt. No. 23 at 2-3.) The court, therefore, confines its analysis to Plaintiff's entitlement to a preliminary injunction on the basis of the protections the BAYSTATE mark enjoys under Massachusetts common law.

    A.  Success on the Merits

The elements that must be proved to succeed in a trademark infringement claim pursuant to Massachusetts common law are the same as those required for the federal claim. *Bose Corp. v. Ejaz*, 732 F.3d 17, 26 n. 7 (1st Cir. 2013). "To establish infringement successfully, a trademark plaintiff must demonstrate that the defendant used an imitation of its protected mark in commerce in a way that is 'likely to cause confusion, or to cause mistake, or to deceive.'" *Bldg. No. 19*, 704 F.3d at 48 (quoting 15 U.S.C. § 1114(1)(a)). Thus, "[a] successful infringement action requires the plaintiff to prove both (1) that its mark merits protection and (2) that the allegedly infringing use of its mark is likely to result in consumer confusion." *Id.* at 49 n.1. In order to merit trademark protection, a mark must be distinctive. *Colt Defense LLC v. Bushmaster Firearms, Inc.*, 486 F.3d 701, 705 (1st Cir. 2007). There is a spectrum of distinctiveness; marks like BAYSTATE, which are geographically descriptive are "'tentatively considered non-distinctive but can attain distinctive status upon an affirmative showing of secondary meaning.'" *Bay State Sav. Bank v. Baystate Fin. Serv's, LLC*, 484 F. Supp. 2d 205, 213 (D. Mass. 2007) (*Baystate II)* (quoting *Borinquen Biscuit*, 443 F.3d at 116).

A geographically descriptive mark has acquired secondary meaning when the public associates the goods or services offered under the mark with a particular supplier, rather than a particular place. *Boston Beer Co. P'ship v. Slesar Bros. Brewing Co.*, 9 F.3d 175, 181 (1st Cir. 1993).

4

"'Proof of secondary meaning entails vigorous evidentiary requirements.'" *Id.* (quoting *Perini Corp. v. Perini Construction*, 915 F.2d 121, 125 (4th Cir. 1990)). "The establishment of secondary meaning in a word is an issue of fact." *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 816 (1st Cir. 1987). Registered marks are presumed to have secondary meaning as of the date of registration, but that presumption is not retroactive. *Baystate II*, 484 F. Supp. 2d at 214. Additionally, because geographically descriptive marks are not inherently distinctive, the user of a mark that has established secondary meaning with respect to one field does not automatically receive protection for the mark when expanding into new areas. *See id.* at 215 ("Plaintiff's relatively minimal offerings in the insurance and investment areas prior to 1997 are insufficient to establish that plaintiff's marks had acquired secondary meaning in those fields."); *see also Bay State Sav. Bank v. Baystate Fin. Serv's, LLC*, 338 F. Supp. 2d 181, 188 (D. Mass. 2004) (*Baystate I*) ("Given the location of both parties in Massachusetts and their operations in Massachusetts and in bordering states, Savings Bank simply cannot sustain its claim that the use of the 'Bay State' marks allows it to exclude all competitors that bear a similar name and operate in a similar field.").

The party seeking protection for the mark bears the burden of proving secondary meaning. *Id.* Though the court may weigh several factors, "[t]he secondary meaning analysis is primarily a subjective one, looking into the minds of potential customers." *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 42 (1st Cir. 1998). To establish secondary meaning in a geographical mark, the party seeking such protection "must prove that a substantial portion of the consuming public associates [the mark] specifically with [the party's] business." *Boston Beer*, 9 F.3d at 182. "Survey evidence has become a well-recognized means of establishing secondary meaning." *Id.* Courts also consider other factors when assessing secondary meaning including (1) the length of time the mark has been in use, (2) the manner in which the mark has been used, (3) the size or prominence of the entity using the mark, (4) the existence and scope of advertising using the mark, and (5) proof of intentional

5

copying. *I.P. Lund Trading*, 163 F.3d at 42. Additionally, where, as here, both parties began using their respective marks in Massachusetts prior to either party registering their mark, the party seeking to block use of the mark by the other party "is required to show that its marks had acquired secondary meaning before [the other party] began using the same or similar mark." *Bay State II*, 484 F. Supp. 2d at 214 (citing *Commerce Ins. Agency, Inc. v. Commerce Nat'l Ins. Serv., Inc.*, 214 F.3d 432, 439 (3rd Cir. 2000)); *see also Prof. Econ. Inc. v. Prof. Econ. Svcs., Inc.*, 421 N.E.2d 1221, 1226 (Mass. App. Ct. 1981) (concluding the plaintiff had not established "exclusive use of the words in issue for its services over a reasonable period of time before" the defendant began operating in Massachusetts).

Plaintiff suggests the relevant inquiry is whether the BAYSTATE mark had a secondary meaning that encompassed physical therapy when Defendants entered the western Massachusetts market in 2019, rather than when Defendants began using the BSPT mark in eastern Massachusetts in 1995. This argument presumes that under Massachusetts law Plaintiff could become the senior user of a mark using the geographic descriptor "baystate" or "bay state" in connection with outpatient physical therapy services in western Massachusetts even while Defendants were building their brand using the BSPT mark in eastern Massachusetts. In support of this position, Plaintiff cites the First Circuit's decision in *Dorpan, S.L. v. Hotel Melia, Inc.*, in which the court ruled that secondary meaning was limited to a party's trade area. 728 F.3d 55 (1st Cir. 2013). However, that portion of the *Dorpan* decision has little relevance here because the First Circuit was applying a specific Puerto Rico statute that provided a senior unregistered user of a mark exclusive use of the mark only in the area in which that user did business. *Id.* at 63-64. Plaintiff has not cited any cases applying Massachusetts common law in a similar manner. While trade area is a relevant factor when determining the risk of consumer confusion, this court has found no indication that Massachusetts common law recognizes that a mark may have different senior users in different trade areas within the state. As Defendants began using the BSPT mark in 1995, Plaintiff must demonstrate that, within the field of physical

therapy, the BAYSTATE mark had developed secondary meaning that encompassed outpatient physical therapy services by that time.

Without question, Plaintiff has established that its use of the BAYSTATE mark goes back to 1976, long before Defendants began using the BSPT mark. Plaintiff has also provided strong evidence of its investment in the BAYSTATE mark and its growth into a prominent institution and employer within western Massachusetts. The record, at this early stage, does not include survey evidence, but Plaintiff's exhibits strongly support a finding that by the time this action was filed, Plaintiff's BAYSTATE mark had acquired secondary meaning with respect to the provision of a wide range of healthcare services throughout western Massachusetts, including outpatient physical therapy services. However, the critical issue in this case is whether the BAYSTATE mark acquired protection under Massachusetts common law before Defendants' BSPT mark acquired such protection. Defendants began using the BSPT mark in Massachusetts in 1995. Neither the year Plaintiff began using the BAYSTATE mark nor the scope of secondary meaning applicable at the time Plaintiff filed this suit provides a sufficient basis for this court to conclude that the BAYSTATE mark enjoys protection from use of the BSPT mark under Massachusetts common law.

After carefully reviewing the exhibits provided by Plaintiff, the court finds Plaintiff has not met its burden to establish that by 1995 the BAYSTATE mark had already acquired the type of broad secondary meaning it now enjoys. Instead, the evidence demonstrates only that by 1995 the BAYSTATE mark was associated with hospital-based services. The single reference in Ex. 38 to a patient who received "cardiac rehabilitation" services at Baystate Medical Center in 1994 following a cardiac procedure is insufficient to establish that Plaintiff was providing outpatient physical therapy services at that time. (Dkt. No. 24-2.) Further, even if Plaintiff had proved that it provided such services prior to 1995, that alone would not meet the burden of establishing the scope of secondary

7

meaning the BAYSTATE mark enjoyed in 1995. Nor does the evidence provided by Plaintiff regarding its own use of the BAYSTATE mark shed light on the early years of the development of the BSPT mark.

The duration of time during which the BAYSTATE and BSPT marks have been used, the existence of multiple registrations at the federal and state levels related to the marks, and the parties' past dealings with respect to the significance and scope of their respective marks make this a complex case. While Plaintiff's decision to seek a preliminary injunction based only on the protection the BAYSTATE mark enjoys under Massachusetts common law simplifies the legal issues, the evidence offered by Plaintiff is insufficient to demonstrate that the BAYSTATE mark enjoyed protection from the BSPT mark. Without such a showing, Plaintiff's cannot demonstrate a likelihood of success on the merits.

B. Irreparable Harm

"In the context of trademark law, irreparable harm is presumed if a plaintiff demonstrates a likelihood of success on the merits." *Baystate I*, 338 F. Supp. 2d at 190. Having concluded that Plaintiff has not met its burden with respect to likelihood of success on the merits, the court could end its analysis with respect to irreparable harm here. *Id.* However, as Plaintiff has separately argued the significant risk of irreparable harm it faces in the absence of an injunction, the court briefly addresses that argument. As previously discussed, Plaintiff has provided significant evidence regarding its efforts to build the BAYSTATE mark in connection with its growth as a leading provider of a wide variety of healthcare services in western Massachusetts. Now that Defendants have expanded into the Springfield area, Plaintiff has concerns about consumer confusion and possible damage to its brand resulting from Defendants operations. As understandable as these concerns are, they do not establish irreparable harm.

By previously licensing its mark to other providers of health care services within the Springfield area, Plaintiff has demonstrated an ability to manage the potential customer confusion that may occur when entities not directly affiliated with Plaintiff offer health care services in the Springfield area using under a name that includes the words bay state. Plaintiff's proposal back in 2008 to license its mark to Defendants and the failure of the parties, over the years, to execute an agreement left this issue unresolved. Plaintiff was clearly on notice that Defendants would likely enter the Springfield market in the future. The 2008 boundary distance view of Springfield, Worcester, and Boston has drastically changed over the years and claiming harm only when the map boundary is crossed is now a weakened assertion. Finally, while the court shares Plaintiff's concerns about the ongoing COVID-19 pandemic, the court does not find the situation increases the risk of irreparable harm to Plaintiff's mark in any meaningful way.

### IV.    CONCLUSION

For the reasons discussed above, the court denies Plaintiff's Motion for Preliminary Injunction (Dkt. No. 10). A scheduling conference will be set in this case in a subsequent order.

It is so Ordered.

        /s/ Mark G. Mastroianni
       MARK G. MASTROIANNI
       United States District Judge