UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | | |
|---|---|---|
| BAYSTATE HEALTH, INC., | ) | |
| | ) | Civil Action No. 3:20-cv-30042-MGM |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Plaintiff's Consented-to Motion to Vacate Order Concerning Plaintiff's Motion for Preliminary Injunction** |
| | ) | |
| BAY STATE PHYSICAL THERAPY, P.C., BAY STATE PHYSICAL THERAPY OF RANDOLPH, INC., & STEVEN WINDWER, | ) | |
| | ) | |
| Defendants. | ) | |

Pursuant to Federal Rule of Civil Procedure 54(b), Plaintiff Baystate Health, Inc. ("Baystate") hereby moves for vacatur of the Memorandum and Order Concerning Plaintiff's Motion for Preliminary Injunction (Dkt. No. 29) ("Order"), which this Court issued on December 15, 2020. Defendants Bay State Physical Therapy, P.C., Bay State Physical Therapy of Randolph, Inc., and Steven Windwer ("Defendants") consent to Plaintiff's Motion. The grounds for relief are as follows.

## BACKGROUND

Baystate filed this action against Defendants alleging infringement of its BAYSTATE trademark and subsequently moved for a preliminary injunction prohibiting Defendants from using any confusingly similar mark in Western Massachusetts. Dkts. No. 1, 10. After hearing, Dkt. No. 27, the Court issued the Order, denying the motion for preliminary injunction, in substantial part on the basis of several rulings of law. Dkt. No. 29. Baystate filed a timely notice of appeal with the First Circuit Court of Appeals. Dkt. No. 32. Subsequently, the parties engaged in a series of settlement conferences sponsored by the Court of Appeals. Those

conferences ultimately resulted in an agreement that included, as a condition of settlement, Defendants joining in or assenting to the filing of this motion by Baystate to vacate the Order. *See* Dkt. No. 44.

## ARGUMENT

### I. This Court should exercise its discretion to vacate its interlocutory Order to prevent an interim ruling from having possible precedential and collateral estoppel impact in future disputes involving an important intellectual property issue under Massachusetts law, on the basis of public policy favoring settlement of disputes and the conservation of judicial resources, and in response to other exceptional circumstances, including a Court of Appeals sponsored mediated settlement.

#### A. The Court has inherent authority under Fed. R. Civ. P. 54(b) to vacate its Order.

The Order adjudicated fewer than all the claims or rights and liabilities of the parties and does not end the action as to any of the claims or parties. The Court, therefore, may use its discretion to revise it at any time before the entry of judgment adjudicating all the parties' rights and liabilities. Fed. R. Civ. P. 54(b); *see Farr Mann & Co. v. M/V Rozita*, 903 F.2d 871, 874–75 (1st Cir.1990) (district court has inherent discretionary power to alter an interlocutory order at any time prior to the entry of the final decree).

The Court's discretion is not limited by *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18 (1994), which held that vacatur of *final judgments* while pending appeal should not be allowed solely on the basis of settlement. The Order at hand does not involve a final judgment, and this Motion, concerning *a non-final order*, presents different considerations than those addressed by *U.S. Bancorp Mortgage Co. See Lycos, Inc. v. Blockbuster, Inc.*, No. C.A. 07-11469-MLW, 2010 WL 5437226, at *2 (D. Mass. Dec. 23, 2010). In particular, in this matter, the parties are resolving their dispute at a relatively early stage, before undertaking discovery and long before trial. Furthermore, other circumstances before this

Court, as discussed below, make vacatur appropriate. *See, e.g., Kerkhof v. MCI WorldCom, Inc.*, 282 F.3d 44, 54 (1st Cir. 2002) (vacatur of final judgment within the equitable discretion of the court when the issues on appeal, mooted by the parties' subsequent actions, were complex and the party moving for vacatur was concerned that "a ruling it had no opportunity to test on appeal" may be binding upon it when confronted with future, similarly situated parties).

**B. Vacating the Order will prevent the interim ruling from having possible precedential and collateral estoppel impact in future disputes involving an important intellectual property issue under Massachusetts law.**

A fundamental motivation underlying this motion, is Baystate's recognition of the potential that other parties may argue that the Order has preclusive effect, notwithstanding the Order's interlocutory nature[1]. The issues underlying the Order involve complex questions of Massachusetts trademark law, particularly its common law. The "Baystate" mark has been categorized as a geographically descriptive term, subject to trademark protection only if it has acquired secondary meaning in association with the goods or services with which it is being identified. The issue becomes more complex where, as here, two parties started using a "Baystate" (or "Bay State") mark in separate areas of the Commonwealth. A key issue in such a situation is whether one such party, to prove priority of its common law rights to the mark relative to the other party in a subregion of the Commonwealth, needs to establish that its mark acquired "secondary meaning" before the other party's first use of its mark *anywhere* in Massachusetts or in just that subregion. That is, may a first party, whose mark has acquired secondary meaning in its trading area, stop a second party from entering its trading area using the same or confusingly similar mark on the same or similar goods/services, if the second party

---

[1] While Baystate does not accept these arguments, it seeks to avoid the risk of these arguments being advanced.

started using its mark in a remote region of Massachusetts before the first party's mark had acquired secondary meaning in its trading area?

Settlement and vacating the interlocutory ruling avoids the need to further address this complex intellectual property issue at this time and "fairly preserves both sides' chance to litigate the issue in an appeals court in the future." *See Kerkhof v. MCI WorldCom, Inc.*, 282 F.3d 44, 54 (1st Cir. 2002).[2] *See also Cisco Sys., Inc. v. Telcordia Techs., Inc.*, 590 F.Supp.2d 828, 830 (E.D.Tex.2008) (vacating a non-final claim order in an intellectual property case after consideration of various factors, including the public interest in the orderly and efficient operation of the federal judicial system and the private interests of the parties). In such a situation, vacatur is particularly appropriate because it can "prevent interim decisions ... from having collateral estoppel effects in future third party litigation" involving important issues of intellectual property law. *See Lycos, Inc., 2010 WL 5437226* at *3 (quoting *Dana v. E.S. Originals, Inc.*, 342 F.3d 1320, 1328 (Fed. Cir. 2003) (Dyk, J., concurring)).

**C. The Court should vacate the Order to promote settlement and conserve judicial resources**

Vacatur in promotion of settlement is generally favored within this Circuit when other important public policy considerations are present. *See generally Motta v. Dist. Dir. of INS*, 61 F.3d 117, 118 (1st Cir. 1995) (per curiam). Granting such relief in furtherance of settlement

---

[2] These objectives are similar to those recognized by the First Circuit Court of Appeals in In *Kerkhof v. MCI WorldCom, Inc.*, 282 F.3d 44, 54 (1st Cir. 2002), where the Court found that vacatur of a final judgment was within the equitable discretion of the court when the issues on appeal, which were mooted by the parties' subsequent actions, were complex and the party moving for vacatur was concerned that "a ruling it had no opportunity to test on appeal" would be potentially binding upon it when confronted with future, similarly situated parties. Such a concern presents the type of "exceptional circumstances" where "the equities plainly favor vacatur." *See Motta v. Dist. Dir. of INS*, 61 F.3d 117, 118 (1st Cir. 1995) (per curiam).

"promotes the public policy of encouraging the settlement of private disputes and fosters judicial economy." *See Freedom Wireless, Inc. v. Bos. Commc'ns Grp., Inc.*, No. CV-00-12234-EFH, 2006 WL 4451477, at *2 (D. Mass. Oct. 11, 2006). Furthermore, as an element of settlement agreed to by the parties, it "avoid[s] further protracted litigation" in this Court. *Id.* Special consideration may be appropriate when the settlement at hand arose, as it has here, from a mediation sponsored by the Court of Appeals. *See Motta*, 61 F.3d at 118 (parties consideration of settlement "only at the suggestion of [the] Court" one of several key factors justifying vacatur of a final judgement).

## II. This Court should follow the process provided by the U.S. Court of Appeals for the First Circuit in *Commonwealth of Puerto Rico v. SS Zoe Colocotroni* for vacating a ruling that is pending appeal.

A movant seeking vacatur of a judgment or order on appeal within the First Circuit may seek relief directly with the district court rather than from the appellate court. *Comm. of Puerto Rico v. SS Zoe Colocotroni*, 601 F.2d 39, 42 (1st Cir. 1979).

> The district court is directed to review any such motions expeditiously, within a few days of their filing, and quickly deny those which appear to be without merit, bearing in mind that any delay in ruling could delay the pending appeal. If the district court is inclined to grant the motion, it should issue a brief memorandum so indicating. Armed with this, movant may then request this court to remand the action so that the district court can vacate judgment and proceed with the action accordingly.

*Id.* This approach, which avoids circuit-level screening of such motions, and relies on the district court's continuing jurisdiction during an appeal to act in aid of the appeal, has "several advantages." 601 F.2d at 42. One is that the district court, being familiar with the case, is in a far better position than the appellate court to evaluate the motion's merits quickly. The second is efficiency: if the circuit court's tentative screening decision would be neither binding on the district court nor particularly instructive to it, there is no reason for it. *See id.*

Such request-for-remand procedure "is not only formally correct, but salutary," and the First Circuit "caution[s] the district courts to utilize it whenever an appeal from the judgment is pending and the trial court's jurisdiction thereby cast in doubt." *Jusino v. Zayas,* 875 F.2d 986, 990 (1st Cir. 1989). *Cf. Rosaura Bldg. Corp. v. Municipality of Mayaguez,* 778 F.3d 55, 64 (1st Cir. 2015) (noting movant should have followed *Zoe Colocotroni* procedure).

**CONCLUSION**

For these reasons, this motion should be granted, and the Order of December 15, 2020 in this matter should be VACATED.

RESPECTFULLY SUBMITTED

PLAINTIFF, BAYSTATE HEALTH, INC.
By Its Attorneys,

/s/ *James C. Duda*

Mary R. Bonzagni, Esq. (BBO # 553771)
James C. Duda, Esq. (BBO # 551207)
Lauren C. Ostberg, Esq. (BBO # 696883)
Bulkley, Richardson and Gelinas, LLP
1500 Main Street, Suite 2700
Springfield, MA 01115-5507
Tel. (413) 272-6286
mbonzagni@bulkley.com
jduda@bulkley.com
lostberg@bulkley.com

Dated: May 28, 2021

**RULE 7.1 CERTIFICATION**

I, James C. Duda, counsel for the Plaintiff, Baystate Health, Inc., hereby certify that the parties have conferred on the subject of this motion and that Defendants, through counsel, have consented to this motion.

/s/ *James C. Duda*
James C. Duda

**CERTIFICATE OF SERVICE**

I, James C. Duda, counsel for the Plaintiff, Baystate Health, Inc., hereby certify that this document, filed through the ECF system on May 28, 2021, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing ("NEF") and electronic copies will be sent to those indicated as non-registered participants on the date of its filing.

/s/ *James C. Duda*
James C. Duda

3464034